BEFORE THE UNITED STATES

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ARCHERY PRODUCTS ANTITRUST LITIGATION | MDL No. |

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER AND CENTRALIZE THE MOVANT'S ACTION AND THE RELATED ACTIONS FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Plaintiff Shawn Butter ("Movant") submits this memorandum of law in support of his Motion to Transfer and Centralize the Movant's Action[1] and the Related Actions for Consolidated or Coordinated Pretrial Proceedings.

In addition to Movant's Action filed in the Western District of Pennsylvania, six related cases have been filed: one in the District of Utah,[2] one in the Middle District of Tennessee,[3] one in the Western District of Missouri,[4] and three in the District of Minnesota[5] (collectively all six cases pending in other jurisdictions are referred to herein as the "Related Actions"). Movant's Action and the Related Actions all allege that the Defendants[6]—the Archery Trade Association

---

[1] *Butter v. Archery Trade Ass'n., Inc. et al.*, No. 2:25-cv-01004-MJH (W.D. Pa.).
[2] *Santarlas v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-00436-DBB-DBP (D. Utah).
[3] *Hansen v. Archery Trade Ass'n., Inc. et al.*, No. 3:25-cv-00779 (M D. Tenn.).
[4] *Dunkin v. Bowtech, LLC et al.*, No. 4:25-cv-00546-BP (W.D. Mo.).
[5] *Babst v. Archery Trade Ass'n., Inc. et al.*, No. 0:25-cv-02721-LMP-ECW (D. Minn.); *Janochoski v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-02788-LMP-ECW (D. Minn.); *Simcik v. Archery Trade Ass'n., Inc. et al.*, No. 0:25-cv-02875-LMP-JFD (D. Minn.).
[6] Defendants named in Movant's action are: the Archery Trade Association, Inc. ("ATA"); manufacturers of archery products, namely, Hoyt Archery, Inc. ("Hoyt"), Bowtech, Inc. ("Bowtech"), Mathews Archery, Inc. ("Mathews"), and Precision Shooting Equipment, Inc. ("PSE") (collectively, "Manufacturer Defendants "); retailers and distributors of archery products, namely, Cabela's, LLC ("Cabela's"), DICK'S Sporting Goods, Inc. ("Dick's"), BPS Direct, LLC d/b/a Bass Pro Shops ("Bass Pro Shops"), Jay's Sports, Inc. d/b/a Jay's Sporting Goods ("Jay's Sporting Goods"), Kinsey's Outdoors, Inc. ("Kinsey's"), Lancaster Archery Supply, Inc. ("Lancaster Archery Supply") (collectively, "Retailer Defendants"); and providers of software which helped facilitate the scheme, namely, Neuintel LLC d/b/a PriceSpider, f/k/a Oris

1

along with a number of archery product manufacturers, distributors, retailers and certain software companies—unlawfully conspired to artificially increase, maintain, or stabilize the retail prices of archery products in the United States in violation of the Sherman Act.

Given the common factual conditions in the Movant's Action and the Related Actions and the accessibility and convenience of the Western District of Pennsylvania, as well as the favorable docket conditions in the district, transfer to and centralization of the Movant's Action and the Related Actions in the Western District of Pennsylvania will advance the efficient resolution of this litigation and serve the convenience of the parties and witnesses.

## FACTUAL AND PROCEDURAL BACKGROUND

The market for archery products includes all the products used in bow sports, including bows, arrows, arrowpoints, targets and archery accessories. *See* Complaint, ECF No. 1, *Butter v. Archery Trade Ass'n, Inc. et al.*, No. 2:25-cv-01004-MJH (W.D. Pa.) ("Movant Compl.") at ¶ 48. These products are sold by manufacturers to distributors and retailers while subject to a minimum advertised price ("MAP") policy. *Id.* at ¶ 10. MAP policies set a minimum price at which these distributors and retailers can advertise a manufacturer's products. *Id.*

The ATA is a professional association which includes the most prominent archery product manufacturers, distributors, and retailers across the United States. *Id.* at ¶ 34. Plaintiff alleges that, beginning in 2014 and continuing to the present, the Manufacturer Defendants and Retailer Defendants, together with the ATA, used the ATA's private communication channels to execute a conspiracy to coordinate the adoption and enforcement of MAP policies for archery products they manufactured and sold. *See*, *id.* at ¶¶ 12-20. This conspiracy was assisted by the Software

---

Intelligence ("Oris"), and TrackStreet, Inc. ("TrackStreet") (together, "Software Defendants"). All of these entities are named as Defendants or referred to as co-conspirators in each of the Related Actions.

2

Defendants who marketed and sold technology products to help the Manufacturer Defendants and Retailer Defendants enforce their MAP policies. *Id.* at ¶ 17. In addition, both the Manufacturer Defendants and Retailer Defendants used the ATA's communication channels to exchange competitively sensitive information. *Id.* at ¶¶ 21-22. The intent and effect of Defendants' conspiracy was to reduce price competition for archery products, resulting in higher prices for purchasers of such products. *Id.* at ¶ 23. Accordingly, Movant seeks treble damages, injunctive relief, and other remedies for these violations of federal antitrust laws. *Id.* at ¶¶ 179, 186.

As of July 21, 2025, seven class action complaints have been filed regarding the alleged conspiracy described above:

- *Babst v. Archery Trade Ass'n., Inc. et al.*, No. 2:25-cv-02721-LMP-ECW (D. Minn.)
- *Butter v. Archery Trade Ass'n., Inc. et al.*, No. 2:25-cv-01004-MJH (W.D. Pa.)
- *Dunkin v. Bowtech, LLC et al.*, No. 4:25-cv-00546-BP (W.D. Mo.)
- *Hansen v. Archery Trade Ass'n., Inc. et al.*, No. 3:25-cv-00779 (M.D. Tenn.)
- *Janochoski v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-02788-LMP-ECW (D. Minn.)
- *Santarlas v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-00436-DBB-DPD (D. Utah); and
- *Simcik v. Archery Trade Ass'n., Inc. et al.*, No. 0:25-cv-02875-LMP-JFD (D. Minn.).

In large measure, the Related Actions (*see* Schedule of Related Actions submitted herewith) involve the same Defendants as Movant's Action.[7] The Movant's Action and each of the Related Actions alleges that Defendants' conspiracy has artificially increased, fixed, stabilized or otherwise maintained the price of archery products in the United States in violation

---

[7] The Software Defendants are not named as Defendants, and only described as co-conspirators, in the following Related Actions: *Babst v. Archery Trade Ass'n , Inc. et al.*, No. 2:25-cv-02721-LMP-ECW (D. Minn.); *Hansen v. Archery Trade Ass'n, Inc. et al.*, No. 3:25-cv-00779 (M.D. Tenn.); *Simcik v. Archery Trade Ass'n, Inc. et al.*, No. 0:25-cv-02875-LMP-JFD (D. Minn.).

of federal antitrust laws. The Movant's Action and each of the Related Actions seeks compensatory damages and injunctive relief on behalf of customers of archery products. The Movant's Action and each of the Related Actions are in a similar procedural posture as all are in the very earliest stages of litigation.[8]

**ARGUMENT**

I.  **CENTRALIZATION OF THE MOVANT'S ACTION AND THE RELATED ACTIONS IS WARRANTED UNDER 28 U.S.C. § 1407**

"When civil actions involving one or more common questions of fact are pending in different districts," this Panel may transfer such actions "to any district for coordinated or consolidated pretrial proceedings," if transfer would serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Because these requirements are met here, the Panel should centralize the Movant's Action and the Related Actions in a single district—the Western District of Pennsylvania, for the reasons set forth below—for coordinated or consolidated pretrial proceedings.

  A.  **The Movant's Action and the Related Actions Involve Common Questions of Fact**

For purposes of Section 1407, common questions of fact exist where multiple actions involve common factual questions and can be expected to focus on a significant number of common events, defendants, and/or witnesses. *See e.g.*, *In re: GoodRx and Pharm. Benefit Manager Antitrust Litig. (No. II)*, --- F. Supp. 3d ---, MDL No. 3148, 2025 WL 1037436, at *2 (J.P.M.L. Apr. 2, 2025) (centralizing related actions where "The actions share overlapping complex issues of fact relating to how the integrated savings program operates, the agreements

---

[8] A responsive motion has been filed by only one of the Defendants (Mathews) in one of the Related Actions: Motion to Dismiss, ECF No. 31, *Santarlas v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-DBB-DBP (D. Ut. July 10, 2025).

4

among GoodRx and the four PBM defendants, the program's impact on independent pharmacies, and the alleged damages."); *In re: Shale Oil Antitrust Litig.*, 743 F. Supp. 3d 1371, 1372 (J.P.M.L. 2024) (centralizing where actions shared defendants and "factual questions arising from an alleged price-fixing conspiracy").

Here, the Movant's Action and each Related Action is brought on behalf of a nationwide class of purchasers of archery products who were injured by conduct involving a conspiracy to fix, raise, maintain or stabilize retail prices for archery products in the United States through the use of MAP policies. The Movant's Action and the Related Actions involve virtually the same Defendants[9], and the Movant's Action and the Related Actions assert antitrust claims under the federal antitrust laws.

Taken together, this is sufficient to show that both the Movant's Action and every Related Action involve common questions of fact. *See e.g.*, *In re: Apple Inc. Smartphone Antitrust Litig.*, 737 F. Supp. 3d 1361, 1362-63 (J.P.M.L. 2024) ("The actions share common questions of fact arising from allegations that Apple has monopolized or attempted to monopolize the smartphone market by controlling the creation and distribution of apps . . . Plaintiffs variously assert virtually identical claims under the Sherman Act, state antitrust and consumer protection laws."); *In re: Granulated Sugar Antitrust Litig.*, 737 F. Supp. 3d 1370, 1371 (J.P.M.L. 2024) ("The complaints are substantially similar and, save for Cargill, Inc., name the same defendants. Further, the actions are brought on behalf of overlapping putative nationwide and multistate classes of direct and indirect purchasers of granulated sugar."); *In re:*

---

[9] The following actions do not name the Software Defendants: *Babst v. Archery Trade Ass'n , Inc. et al.*, No. 2:25-cv-02721-LMP-ECW (D. Minn.); *Hansen v. Archery Trade Ass'n, Inc. et al.*, No. 3:25-cv-00779 (M.D. Tenn.); *Simcik v. Archery Trade Ass'n, Inc. et al.*, No. 0:25-cv-02875-LMP-JFD (D. Minn.).

*Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) ("All of the actions assert overlapping putative nationwide classes of direct purchasers of domestic airfare, and all the actions assert antitrust violations of Section 1 of the Sherman Act.").

Given this, centralization is unquestionably appropriate. *See, e.g., In re: Direct Purchaser Plaintiff Beef Antitrust Litig.*, 609 F. Supp. 3d 1412, 1413 (J.P.M.L. 2022) (centralizing where all actions asserted that defendants conspired "to limit the supply, and fix the prices, of beef sold in the U.S. wholesale market"); *In re: Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1377 (J.P.M.L. 2018) ("All actions share complex factual questions arising from allegations that defendants engaged in a conspiracy to fix, raise, maintain, or stabilize the price of methylene diphenyl diisocyanate (MDI) and toluene diisocyanate (TDI) sold in the United States . . ."); *In re: Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017) ("Plaintiffs in all the actions listed on Schedule A assert similar claims for violations of federal and state antitrust and consumer protection laws.").

### B. Centralization Would Serve the Convenience of Parties and Witnesses and Promote the Just and Efficient Conduct of the Movant's Action and the Related Actions

Because there are common factual allegations and legal claims in the Movant's Action and the Related Actions, centralization would serve "the convenience of parties and witnesses and will promote the just and efficient conduct" of the Movant's Action and the Related Actions. 28 U.S.C. § 1407(a); *see In re: Shale Oil Antitrust Litig.*, 743 F. Supp. 3d at 1371-72. Moreover, given the likelihood that additional cases will be filed, centralization under Section 1407 now would be the most efficient means of proceeding. *See, e.g. In re: AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) (rejecting alternatives to centralization because they "would delay the resolution of the common core issues in this litigation").

Centralization is also appropriate because the plaintiffs in the Related Actions now pending in four different districts with distinct groups of counsel will all undoubtedly pursue substantially similar testimony, documents, and other evidence from largely the same set of Defendants as Movant. Centralizing the Movant's Action and the Related Actions will place all actions before a single judge who can efficiently formulate a pretrial program which ensures that discovery and all pretrial proceedings will be conducted in a manner which leads to the efficient and expeditious resolution of all the actions to the benefit of both the parties and the judicial system. *In re: Direct Purchaser Plaintiff Beef Antitrust Litig.*, 609 F. Supp. 3d at 1414 (granting centralization over four coordinated categories of litigation because "If allowed to proceed separately, as requested by movants, the individual direct purchaser actions likely would involve duplicative discovery and potentially inconsistent pretrial rulings."); *In re: Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) ("Transfer under Section 1407 will offer the benefit of placing all related actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands.").

In addition, because the Movant's Action and each Related Action is a class action, centralization will eliminate the possibility of inconsistent rulings on class certification from courts in multiple districts. *See, e.g., In re: Granulated Sugar Antitrust Litig.*, 737 F. Supp. 3d at 1371 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly as to class certification and conserve the resources of the parties, their counsel, and the judiciary.").

For these reasons, the Panel should centralize the Movant's Action and the

Related Actions in the interests of justice and efficiency.

## II. THE PANEL SHOULD CENTRALIZE THE MOVANT'S ACTION AND THE RELATED ACTIONS IN THE WESTERN DISTRICT OF PENNSYLVANIA

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; (2) the location of "relevant witnesses and evidence"; (3) the support of parties for centralization in the district; and (4) the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation." *In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). Based on consideration of these factors, Movant respectfully submits that the Western District of Pennsylvania is the most appropriate district in which to centralize these cases.

### A. The Western District of Pennsylvania is Convenient for the Parties and Witnesses

To honor the policies underlying 28 U.S.C. § 1407, the district chosen to serve as the transferee court should "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *In re: Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 999 F. Supp. 2d 1383, 1384 (J.P.M.L. 2014).

The Western District of Pennsylvania is just such a court. The Western District of Pennsylvania courthouse in Pittsburgh is located less than 20 miles from Pittsburgh International Airport.[10] With more than 540 routes offered as of June 2025, this airport is easily accessible from all major cities across the United States.[11] Additionally, the Western District of Pennsylvania courthouse in Pittsburgh is walking distance from the Pittsburgh train station,

---

[10] https://maps.app.goo.gl/xtr95vTgGGZJpQK49.
[11] https://pitinternationalairport.com/statistics/.

which provides daily Amtrak service.[12] Pittsburgh offers an abundance of hotels, taxis, and car rental agencies. These options make the Western District of Pennsylvania accessible and convenient for all parties in the Movant's Action and the Related Actions, as well as their counsel and witnesses. *See In re: Erie Covid-19 Bus. Interruption Prot. Ins. Litig.*, 509 F. Supp. 3d 1370, 1374 (J.P.M.L. 2020) ("Pittsburgh represents an accessible forum with the capacity to efficiently manage these cases.").

### B. Relevant Witnesses and Evidence Are Located in Pennsylvania

In addition, relevant witnesses and evidence are located in the Commonwealth of Pennsylvania and within the Western District of Pennsylvania. Three Defendants are located in Pennsylvania, more than in any other state where a Related Action has been filed, and one of those is located in the Western District of Pennsylvania. Defendant DICK'S Sporting Goods is headquartered in Coraopolis, Pennsylvania, within the Western District. Defendant Kinsey's Outdoors, Inc. is in Mount Joy, Pennsylvania, and Defendant Lancaster Archery Supply, Inc. is in Lancaster, Pennsylvania.[13] All three Defendants within the state are members of the ATA and will have many important witnesses and relevant documents. *See In re: Concrete and Cement Additives Antitrust Litig.*, 730 F. Supp. 3d 1381, 1382 (J.P.M.L. 2024) (centralizing in the Southern District of New York where it was "geographically central to the involved domestic and international parties" and where "[r]elevant documents and witnesses may be found in or near the Southern District of New York"); *In re: Ry. Indus. Emp. No-Poach Antitrust Litig.*, 326 F. Supp. 3d 1381, 1382 (J.P.M.L. 2018) (centralizing in Western District of Pennsylvania where "[c]ertain defendants or their subsidiaries are located in or near this

---

[12] https://maps.app.goo.gl/DBJy1dHHDsfaXqpR6.
[13] Other Defendants are based in various states across the United States: Oregon, Utah, Wisconsin, Arizona, Missouri, Nebraska, Michigan, Minnesota, Nevada, and California.

9

district . . ."). Finally, Movant is a resident of the Western District of Pennsylvania. *See* Movant Compl. at ¶ 31.

In addition, Pennsylvania is one of the largest centers for bow sports and bowhunting in the United States. In 2023, ATA research found that Pennsylvania contained the nation's highest number of licensed bowhunters, at some 331,000. *See id.* at ¶ 27. Western Pennsylvania is a particularly popular location for bowhunters who hunt deer, as deer in western Pennsylvania consistently produce the state's largest "racks" (antlers).[14] In addition, Pittsburgh itself is currently using bowhunters to cull the area's deer population.[15]



With more than 330,000 bowhunters hitting the woods annually, Pennsylvania can lay claim as one of the hottest archery deer destinations in the country. The above map represents official Pope & Young whitetail entries from the Keystone State (colored coded to show how many have come from each county).

---

[14] https://www.northamericanwhitetail.com/editorial/best-spots-for-bowhunting-trophy-bucks-in-pennsylvania/262509.
[15] https://www.pittsburghmagazine.com/bow-hunting-of-deer-expands-to-4-more-pittsburgh-parks/.

10

Figure 1.[16]

Accordingly, evidence involving a particularly large subset of the proposed nationwide class is likely to be present in the Western District of Pennsylvania.

### C. Judge Marilyn J. Horan is an Experienced Jurist Who Can Efficiently Manage This Litigation, and the Western District of Pennsylvania is a Favorable Jurisdiction Based on its Docket Conditions

Judge Marilyn J. Horan is currently presiding over Movant's action. She has been a Federal District Court Judge for more than six years. Before that, she served for more than 22 years as a Court of Common Pleas trial judge in Butler County, Pennsylvania. Judge Horan is an experienced and highly capable jurist.

In addition, Judge Horan has not yet had the opportunity to preside over an MDL proceeding. Thus, centralizing the Movant's Action and the Related Actions in the Western District of Pennsylvania will provide Judge Horan with the opportunity to preside over a complex antitrust matter which will benefit from the significant experience she brings to bear. This favors centralizing the Movant's Action and the Related Actions before her. *See In re: Suboxone (Buprenorphine/Naloxone) Film Mktg., Sales Pracs., & Prod. Liab. Litig.,* 717 F. Supp. 3d 1376, 1377 (J.P.M.L. 2024) (assigning to judge "who has not yet had the opportunity to preside over an MDL."); *In re: Crop Inputs Antitrust Litig.*, 543 F. Supp. 3d 1381, 1382 (J.P.M.L. 2021) ("[C]entralization in this district allows us to assign these cases to a jurist . . . who has not yet had the opportunity to preside over multidistrict litigation."); *In re Loestrin 24 Fe Antitrust Litig.*, 978 F. Supp. 2d 1371, 1372 *(*J.P.M.L. 2013*)* (transferring cases to District of Rhode Island in part because "it allows [the Panel] to assign this litigation to an

---

[16] https://www.northamericanwhitetail.com/editorial/best-spots-for-bowhunting-trophy-bucks-in-pennsylvania/262509.

experienced and capable jurist who has not yet presided over an MDL."); *see also*, *In re: Ry. Indus. Emp. No-Poach Antitrust Litig.*, 326 F. Supp. 3d at 1382 (transferring cases to Western District of Pennsylvania, noting that "Judge Joy Flowers Conti is an experienced transferee judge who is willing and able to handle this litigation.").

Finally, the Western District of Pennsylvania has favorable docket conditions, which will allow it to more efficiently manage the centralized proceedings than any of the other courts in which the Related Actions have been filed. For the 12-Month period ending March 2025, the Western District of Pennsylvania has fewer pending cases per judgeship than any of the jurisdictions in which the Related Actions have been filed. The Western District of Pennsylvania had 384 cases pending per judgeship, while the District of Minnesota had 1,601, the Middle District of Tennessee had 590, the District of Utah had 494, and the Western District of Missouri had 414.[17] In addition, for the 12-Month period ending March 2025, the Western District of Pennsylvania resolves civil actions more quickly than any of the jurisdictions in which the Related Actions have been filed, taking a median of 6.9 months to do so, as opposed to the District of Utah (9.1 months), the District of Minnesota (8.7 months), the Middle District of Tennessee (7.4 months), or the Western District of Missouri (7.0 months).[18] Finally, as of July 2025, the Western District of Pennsylvania has only three pending MDL cases. That is fewer than the District of Minnesota, which has seven pending MDLs, and is only slightly above the Western District of Missouri, which has two, the Middle District of Tennessee, which has one, and the District of Utah, which has none.[19]

---

[17] United States District Courts – National Judicial Caseload Profile (March 31, 2025), *available at* https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2025.pdf.
[18] *Id.*
[19] MDL Statistics Report – Distribution of Pending MDL Dockets by District (July 1, 2025), *available at*

The Western District of Pennsylvania is therefore the most suitable transferee district for the efficient and expeditious resolution of the centralized and consolidated or coordinated litigation. *See In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011) (transferring to a district with "favorable docket conditions").

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Panel order that the Movant's Action and the Related Actions, as well as any case that may be subsequently filed asserting related or similar claims, be transferred to and centralized before the Honorable Marilyn J. Horan of the Western District of Pennsylvania for consolidated or coordinated pretrial proceedings.

Dated: July 21, 2025

Respectfully submitted,

/s/ Gregory S. Asciolla

Gregory S. Asciolla
Alexander E. Barnett
Theodore J. Salem-Mackall
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
gasciolla@dicellolevitt.com
abarnett@dicellolevitt.com
tsalemmackall@dicellolevitt.com

Kelly K. Iverson
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
(412) 322-9243
kelly@lcllp.com

---

https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-1-2025_0.pdf.

Robert N. Peirce, III
D. Aaron Rihn
**ROBERT PEIRCE & ASSOCIATES P.C.**
437 Grant Street, Suite 1100
Pittsburgh, Pennsylvania 15219
(844) 383-0565
robpeirce@peircelaw.com
arihn@peircelaw.com

*Attorneys for Movant*