BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ARCHERY PRODUCTS ANTITRUST LITIGATION | MDL NO. 3160 |

PLAINTIFF ERICK BABST'S RESPONSE TO MOTION TO TRANSFER OF RELATED ACTIONS FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS

I. INTRODUCTION

Plaintiff Erick Babst ("Babst"), pursuant to 28 U.S.C. § 1407, respectfully submits, this response to Plaintiff Shawn Butter's ("Movant's") Motion to Transfer Related Actions for Consolidated or Coordinated Pretrial Proceedings, ECF No. 1. Plaintiff Babst agrees that centralization and transfer are appropriate. However, centralization should not be in the Western District of Pennsylvania, but in the District of Minnesota.

In addition to the *Babst* action filed in the District of Minnesota, four others have been filed in the District of Minnesota,[1] two in the District of Utah,[2] one in the Middle District of Tennessee,[3] one in the Western District of Missouri,[4] one in the District of Colorado,[5] one in the Western District of Wisconsin,[6] one in the Eastern District of Pennsylvania,[7] and one in the Western District

---

[1] *Janochoski v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-02788-LMP-ECW (D. Minn.); *Simcik v. Archery Trade Ass'n., Inc. et al.*, No. 0:25-cv-02875-LMP-JFD (D. Minn.); *Vale v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-03110-ECT-EMB (D. Minn.); *Swails v. Archery Trade Ass'n et al.*, No. 0:25-cv-03146 (D. Minn.).
[2] *Santarlas v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-00436-DBB-DBP (D. Utah); *Close v. Hoyt Archery Inc. et al.*, No. 2:25-cv-00617-JNP (D. Utah).
[3] *Hansen v. Archery Trade Ass'n., Inc. et al.*, No. 3:25-cv-00779-AAT (M D. Tenn.).
[4] *Dunkin v. Bowtech, LLC et al.*, No. 4:25-cv-00546-BP (W.D. Mo.).
[5] *Sabatini et al v. Hoyt Archery, Inc., et al.*, No. 1:25-cv-02355-RMR (D. Co.).
[6] *Montpetit v. Hoyt Archery, Inc. et al.*, No. 3:25-cv-00653 (W.D. Wis.) (indirect purchaser action).
[7] *Hernandez Diaz et al. v. Bowtech, Inc. et al.*, No. 5:25-cv-04277-CH (E.D. Pa.)

1

of Pennsylvania,[8] (collectively all twelve cases separate from Babst's are referred to herein as the "Related Actions").

*Babst* and the Related Actions all allege that Defendants[9]—the Archery Trade Association, which is located in Minnesota, along with a number of archery product manufacturers, distributors, retailers and certain software companies—unlawfully conspired to artificially increase, maintain, or stabilize the retail prices of archery products in the United States in violation of the Sherman Act.

Movant Shawn Butter, in the Western District of Pennsylvania action, filed a Motion to Transfer and Centralize the actions in the Western District of Pennsylvania. Babst agrees with Movant that centralization of the actions is appropriate. However, the District of Minnesota is a more appropriate venue for centralization of all the Related Actions for several reasons: (1) of the thirteen actions filed, more have been filed in the District of Minnesota than any other district (five); (2) Defendant Archery Trade Association ("ATA") is headquartered in New Ulm, Minnesota; (3) Minnesota is a centrally located state and is a convenient location for a case involving evidence located from coast to coast; (4) the District of Minnesota has ample resources to efficiently manage multidistrict litigation; (5) the assigned U.S. District Judge, the Honorable Laura M. Provinzino, is an accomplished jurist who has yet to oversee multidistrict litigation ("MDL"); and (6) Minnesota is home to thousands of archery enthusiasts.

---

[8] *Butter v. Archery Trade Ass'n., Inc. et al.*, No. 2:25-cv-01004-MJH (W.D. Pa.).
[9] Defendants named in the *Babst* action are: Archery Trade Association, Inc.; Bowtech Inc.; BPS Direct, LLC d/b/a Bass Pro Shops; Cabela's LLC; Dick's Sporting Goods, Inc.; Hoyt Archery. Inc.; Jay's Sporting Goods; Kinsey's Outdoors, Inc.; Lancaster Archery Supply, Inc.; Matthews Archery, Inc.; and Precision Shooting Equipment, Inc.

## II. BACKGROUND

On May 30, 2025, the first of the Related Actions, *Santarlas v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-00436-DBB-DBP (D. Utah), was filed in the District of Utah. Counsel filed the *Babst* case shortly thereafter, on June 27, 2025.

The *Babst* action and the Related Actions all involve common questions of law and fact— they allege that Defendants engaged in an unlawful contract, combination, or conspiracy to fix the prices of Archery Products sold throughout the United States. *Babst* and the Related Actions allege that Defendants acted collectively to implement and vigorously enforce minimum advertised price ("MAP") policies throughout the industry following a concern that price competition within the industry was driving prices down and impacting profit margins for manufacturers and retailers. *Babst* and the Related Actions further allege that Defendants engaged in a continuous and multi-faceted exchange of competitively sensitive information, which further suppressed price competition and permitted Defendants to monitor each other's adherence to the conspiracy. Finally, *Babst* and the Related Actions emphasize the role of the ATA— the primary trade association for the Archery Products industry and its exclusive membership consisting of manufacturers, distributors, retailers, and other participants in the supply chain for Archery Products – which served as a hub of the conspiracy from its headquarters in New Ulm, Minnesota.[10]

---

[10] The underlying allegations in all of the Related Actions are common, but where several of the Related Actions, including the first-filed *Santarlas* action and the *Janochoski* and *Dunkin* actions, allege a single count of violation of Section 1 of the Sherman Act, the *Babst* action, as well as the *Hansen, Simcik, and Butter* complaints all allege a second count of violation of Section 1 of the Sherman Act for the exchange of competitively sensitive information. *Compare, e.g., Santarlas,* ECF No. 1 ¶¶ 155–61 *with Babst*, ECF No. 1 ¶¶ 181–94.

## III. ARGUMENT

### A. Centralization is Proper

Transfer and consolidation of actions pending in different districts to a single federal district court is permitted under 28 U.S.C. § 1407 when such actions involve one or more common questions of fact and it is determined that transfer of such proceedings will benefit the convenience of parties and witnesses and promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). Those standards are met here.

The *Babst* action and the Related Actions all involve common questions of fact. The consolidation and transfer sought involves (currently) thirteen putative nation-wide class actions, each alleging that Defendants engaged in an unlawful contract, combination, or conspiracy to fix the prices of Archery Products sold throughout the United States. Common questions of fact among the actions include:

- Whether Defendants and their co-conspirators engaged in a contract, combination, or conspiracy to raise, fix, maintain, or stabilize prices of Archery Products sold in interstate commerce in the United States in violation of federal antitrust laws;
- Whether Defendants agreed to unreasonably restrain trade in violation of federal antitrust laws;
- The identity of the participants of the alleged conspiracy;
- The scope and duration of the alleged conspiracy;
- The acts performed by Defendants and their co-conspirators in furtherance of the alleged conspiracy;
- The effect of Defendants' alleged conspiracy on the prices of Archery Products sold in the United States during the Class Period;

- Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and other members of the Class;

- Whether Plaintiff and other members of the Class are entitled to, among other things, injunctive relief and if so, the nature and extent of such injunctive relief;

- The appropriate class-wide measure of damages; and

- Whether the statute of limitations was tolled or whether Defendants fraudulently concealed the existence of their anticompetitive conduct from Plaintiff and the Class.

Additionally, the convenience of parties and witnesses is facilitated by transfer and consolidation. The District of Minnesota possesses unique characteristics which set it apart from any other district regarding the relative convenience of the parties and witnesses involved. Defendant ATA is headquartered in New Ulm, Minnesota, which is in the District. Document discovery regarding the ATA membership, board of directors, trade shows, and communications between association members will necessarily center upon ATA's headquarters in New Ulm, Minnesota. Many witnesses common to the actions are located in the District and can be deposed there regarding the alleged anticompetitive conduct. St. Paul is a convenient location for all parties and counsel; it is centrally located in the nation, served by major air carriers from across the country, and can provide coordinated access to documents and witnesses already located there.

At this time, there is no feasible alternative to centralization of these actions. Given the number of actions filed in various jurisdictions, it is unlikely that all Plaintiffs can agree on a single jurisdiction for centralization.

**B.      The District of Minnesota is the Most Appropriate Forum for Centralization**

1.      <u>Five of Thirteen Actions Have Been Filed in the District of Minnesota</u>

As mentioned above, there have been thirteen total actions filed. Five out of the thirteen were filed in the District of Minnesota.[11] The Judicial Panel on Multidistrict Litigation ("JPML") has found that a transferee district is appropriate when "[m]ore actions are pending in that district than in any other federal district." *In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 543 (J.P.M.L. 1975). This alone shows that the District of Minnesota makes the most sense as the venue for these consolidated actions.

2.      <u>The ATA is Headquartered and at Home in Minnesota</u>

The ATA is the hub and organizing entity of Defendants' conspiracy. As detailed extensively in *Babst* and the Related Actions, all Defendants are members of the ATA, much of the intra-Defendant communication through which the conspiracy was effectuated was made by the ATA and through official ATA channels, and the ATA played a central role in creating and monitoring the industry-wide MAP policies that artificially inflated the price of Archery Products.[12] The ATA is headquartered and based in New Ulm, Minnesota.[13] In determining the appropriate transferee venue, the location of ATA's headquarters and base of operations in the District of Minnesota is a strong factor supporting selection of that district. *See In re Nissan N. Am., Inc., Odometer Litig. (NO. II)*, 542 F. Supp. 2d 1367, 1369 (J.P.M.L. 2008) (ordering transfer to a District where Defendant's headquarters was located and where relevant discovery would

---

[11] *See Babst* No. 0:25-cv-02721-LMP-ECW (D. Minn.); *Janochoski* No. 0:25-cv-02788-LMP-ECW (D. Minn.); *Simcik* No. 0:25-cv-02875-LMP-JFD (D. Minn.); *Vale* No. 0:25-cv-03110-LMP-ECW (D. Minn.); and *Swails* No. 0:25-cv-03146 (D. Minn.).
[12] *See, e.g., Babst,* ECF No. 1. ¶¶ 41–57, 65, 98–99.
[13] *See Babst,* ECF No. 1 ¶ 17.; *see also ATA Bylaws and Conduct* § 2.01, ARCHERY TRADE ASSOCIATION, https://archerytrade.org/about-ata/bylaws-and-conduct/ (last visited July 22, 2025) ("The Corporation's principal executive office will be located in New Ulm, Minnesota").

likely be found); *In re "Factor VIII or IX Concentrate Blood Products", Prod. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) ("In selecting the Northern District of Illinois as the transferee forum, we note that… one principal defendant is headquartered in Illinois"). That a key Defendant with access to readily identifiable and relevant information is located in Minnesota strongly supports consolidation and transfer to the District of Minnesota.

        3.      <u>The District of Minnesota is a Centrally Located and Convenient Location for a Case Involving Evidence Located From Coast to Coast</u>



The above map shows the locations of the headquarters for each of the eleven Defendants named in the *Babst* action. Also included on the map are the headquarters of Neuintel LLC, and TrackStreet, Inc. Babst has alleged that these parties are co-conspirators but has not named them as Defendants.[14] Because the Defendants are spread across the United States, Minnesota would serve as a convenient, geographically central location. The JPML has previously found the District of Minnesota to be a geographically central district. *See In re Operation of Missouri River Sys.*

---

[14] Several of the Related Actions name these two parties as Defendants.

7

*Litig.*, 277 F. Supp. 2d 1378, 1379 (J.P.M.L. 2003) ("We note that given the distribution of the parties and actions in this docket, the Minnesota forum is an accessible and geographically convenient district"); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) (selecting Minnesota due to the "varied locations of parties and witnesses in this docket and the geographic dispersal of pending actions"). And the JPML has previously found that a transferee district is appropriate "where an action is already pending" and that district "provides an accessible, metropolitan location." *In re Rhodia S.A., Sec. Litig.,* 398 F. Supp. 2d 1359, 1360 (J.P.M.L. 2005). Accordingly, this factor supports consolidation and transfer to the District of Minnesota.

        4.    <u>The District of Minnesota has Ample Resources to Efficiently Manage Multidistrict Litigation</u>

The relative conditions of the dockets where the Related Actions have been filed further support consolidation and transfer to the District of Minnesota. While, as of July 1, 2025, the District of Minnesota has seven active MDL matters, they are assigned to six distinct Judges.[15] Judge Provinzino, who is assigned to the *Babst*, *Janochoski, Simcik, and Vale* actions in Minnesota, does not have an active MDL assigned to her. Therefore, there are no concerns regarding her ability to take on this MDL.

The District of Minnesota is also no stranger to nationwide antitrust class action MDLs such as *Babst* and the Related Actions. The District is currently the forum for *In re Cattle & Beef Antitrust Litig.,* No. 0:22-md-03031-JRT-JFD, *In re Pork Antitrust Litig.,* No. 0:18-cv-01776-JRT-

---

[15] MDL Statistics Report – Distribution of Pending MDL Dockets by District (July 1, 2025), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-1-2025_0.pdf (last visited July 23, 2025). The Western District of Pennsylvania has three MDLs, the Middle District of Tennessee has one MDL, the Western District of Missouri has two MDLs, and the District of Utah has none.

JFD, and *In re Granulated Sugar Antitrust Litig.,* No. 0:24-md-03110-JWB-DTS. The MDL experience the District of Minnesota provides further supports the consolidation of the Related Actions and the Motion to Transfer to the District of Minnesota.

The *Butter* Movant suggests that the Western District of Pennsylvania has more favorable docket conditions because, *inter alia*, the District of Minnesota has more cases pending per judgeships. It bears noting that this statistic is greatly skewed by *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.,* No. 0:15-md-02666-JNE-DTS, which consists of over 8,000 individual pending cases, all of which are centralized in front of one judge.[16] Removing these individual cases results in the District of Minnesota having 2,444 pending cases, which breaks down into approximately 350 pending cases per judgeship – fewer than any of the other forums where the Related Actions have been filed. Accordingly, the relative docket conditions support transfer to the District of Minnesota.

     5.     <u>Judge Provinzino is an Accomplished Jurist and Readily Capable to Manage These Actions</u>

Judge Laura M. Provinzino is currently presiding over Babst's action. Before being appointed a Federal District Court Judge, she served as an Assistant United States Attorney in the District of Minnesota for fourteen years handling a multitude of complex and high-profile cases. Judge Provinzino is an accomplished jurist and is fully capable of presiding over the Related Actions.

Additionally, Judge Provinzino has not yet had the opportunity to preside over an MDL.[17] Consolidating and transferring the Related Actions to the District of Minnesota will provide Judge

---

[16] *See* MDL Statistics Report *supra* note 15 at 2.
[17] Judge Provinzino is assigned to a case which has been stayed pending a decision of the JPML on whether to consolidate and transfer. *See FCA US LLC*, No. 24-CV-4041 (LMP/TNL), 2025 WL

Provinzino the opportunity to oversee an MDL matter. The JPML has favored assigning MDL matters to Judges who have not yet presided over one. *See In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) ("We assign these cases to Judge Mary S. Scriven …, an experienced jurist who has not yet had the opportunity to preside over an MDL"); *In re Atrium Med. Corp. C-Qur Mesh Prods. Liab. Litig.*, 223 F. Supp. 3d 1355, 1357 (J.P.M.L. 2016) ("By selecting the Honorable Landya B. McCafferty to preside over this litigation, we are selecting a jurist with the willingness and ability to handle this litigation, but who has not yet had the opportunity to preside over an MDL"); Transfer Order at *2, *In re Shale Oil Antitrust Litig.*, MDL No. 3119 (J.P.M.L. Aug. 1, 2024) (transferring MDL to Judge Matthew L. Garcia, who was appointed to the bench a year-and-a-half prior to the assignment).

Judge Provinzino's knowledge as a Judge and readiness to preside over an MDL for the first time support transfer to the District of Minnesota.

---

314966 (D. Minn. Jan. 28, 2025). The parties in that case have moved for transfer to two different districts, neither of which are the District of Minnesota.

6. <u>Minnesota is One of the Most Popular States for the Sport of Bowhunting</u>

Finally, Minnesota consistently ranks high in popularity for bowhunting and number of bowhunters among the states.[18] The map below depicts the numerous bow shops, clubs, and ranges located just around the Twin Cities of Minneapolis and St. Paul.



As evidenced by this fact, as well as the headquarters of the ATA in Minnesota, the District of Minnesota has a substantial connection to the subject matter of this case and a significant interest in its adjudication. Accordingly, evidence involving a substantial portion of the proposed nationwide class is likely to be present in the District of Minnesota. *See In re Air Crash Disaster*

---

[18] *States with the Most Bow Hunters*, 24/7 WALL ST, https://247wallst.com/special-report/2024/01/31/states-with-the-most-bow-hunters/ (last visited July 23, 2025) (ranking Minnesota 12th of 40 ranked states with 57,587 bowhunters as of 2021); 2021 STATE-BY-STATE BOWHUNTER NUMBERS, ARCHERY TRADE ASSOCIATION, https://archerytrade.org/wp-content/uploads/2023/03/2021-Bowhunter-Data-1.pdf (last visited July 23, 2025) (showing 104,711 bowhunters in Minnesota during 2021–22 season, ranking 11th out of 50 states).

11

*Near Silver Plume, Colo., on Oct. 2, 1970*, 352 F. Supp. 968, 969 (J.P.M.L. 1972) (selecting a District in which many of the plaintiffs and prospective plaintiffs were domiciled). This connection further supports centralization and transfer to the District of Minnesota.

## IV. CONCLUSION

For the foregoing reasons, the Panel should centralize these actions and transfer them to the District of Minnesota.

Respectfully submitted,

Dated: August 7, 2025

*/s/ Michelle J. Looby*
Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#0388166)
Anthony J. Stauber (#0401093)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 So. Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
tstauber@gustafsongluek.com

***Counsel for Plaintiff Erick Babst***