BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATIONS

| | |
|---|---|
| IN RE: ARCHERY PRODUCTS ANTITRUST LITIGATION | MDL No. 3160 |

PLAINTIFF BROCK MONTPETIT'S RESPONSE TO MOTION TO TRANSFER OF RELATED ACTIONS FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS

I. INTRODUCTION

Pursuant to 28 U.S.C. § 1407, Plaintiff Brock Montpetit ("Plaintiff" or "Montpetit") respectfully submits this response to Plaintiff Shawn Butter's ("Movant") Motion to Transfer Related Actions for Consolidated or Coordinated Pretrial Proceedings. ECF No. 1. While Plaintiff agrees with Movant that centralization is appropriate, Plaintiff disagrees with Movant's proposal of centralization in the Western District of Pennsylvania and instead supports centralization of these actions in either the Western District of Missouri or the District of Minnesota. Both of these districts offer geographically central locations and the presence of key Defendants.

II. BACKGROUND

Thus far, twelve actions alleging similar antitrust violations have been filed in eight different locations across the country.[1] These actions generally allege that Defendants

---

[1] *Janochoski v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-02788-LMP-ECW (D. Minn.); *Simcik v. Archery Trade Ass'n, Inc. et al.*, No. 0:25-cv-02875-LMP-JFD (D. Minn.); *Vale v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-03110-ECT-EMB (D. Minn.); *Swails v. Archery Trade Ass'n et al.*, No. 0:25-cv-03146 (D. Minn.); *Santarlas v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-00436-DBB-DBP (D. Utah); *Close v. Hoyt Archery Inc. et al.*, No. 2:25-cv-00617-JNP (D. Utah); *Hansen v. Archery*

1

unlawfully conspired to artificially increase, maintain, or stabilize the prices of archery equipment throughout the United States in violation of the Sherman Act and various state antitrust and consumer protection statutes.

The global Archery Equipment market is a rapidly growing industry, valued at approximately $4.16 billion in 2024, with the United States comprising about 89% of the market. This market is comprised of manufacturers, retailers, distributors, and consumers of the products. The equipment used in bowhunting and competitive archery is expensive – with a single bow often costing thousands of dollars. In order to maintain the high cost of these products, the Plaintiffs have alleged that Defendants adopted and enforced Minimum Advertised Pricing ("MAP") policies. The adoption and enforcement of the MAP policies, as alleged by the Plaintiffs, was an illegal conspiracy to suppress competition in the market and anticompetitively raise prices on these already expensive products.

## III. ARGUMENT

### A. Centralization is Proper

The transfer and consolidation of these actions currently pending in districts across the United States is proper under 28 U.S.C. § 1407. Specifically, this Panel is authorized to consolidate and transfer civil cases when: (1) they involved common questions of fact;

---

*Trade Ass'n., Inc. et al.*, No. 3:25-cv-00779-AAT (M D. Tenn.); *Dunkin v. Bowtech, LLC et al.*, No. 4:25-cv-00546-BP (W.D. Mo.); *Sabatini et al v. Hoyt Archery, Inc., et al.*, No. 1:25-cv-02355-RMR (D. Co.); *Hernandez Diaz et al. v. Bowtech, Inc. et al.*, No. 5:25-cv-04277-CH (E.D. Pa.); *Montpetit v. Hoyt Archery, Inc. et al.*, No. 3:25-cv-00653 (W.D. Wis.); *Butter v. Archery Trade Ass'n, Inc., et. al.*, No. 2:25-cv-01004-MJH (W.D. PA).

(2) consolidation and transfer will be for the convenience of the parties and witnesses; and (3) consolidation and transfer will promote the just and efficient conduct of the litigation. *Id.* These cases meet each of these criteria.

### 1. Common Questions of Fact and Law

The related actions all involve common questions of law and fact. For example, some common questions of fact include:

- Whether Defendants conspired to fix, raise, maintain, or stabilize the prices of Archery Equipment;
- The identity of the participants of the alleged conspiracy;
- The scope and duration of the alleged conspiracy;
- Whether Defendants exchanged detailed, competitively sensitive and closely guarded pricing and business information;
- Whether Defendants' actions caused the prices of archery equipment to be artificially inflated beyond competitive levels; and
- Whether Plaintiffs were injured by Defendants' actions and entitled to injunctive and monetary relief for that injury.

These common questions of fact arise in each of the related cases and thus these cases evince a prototypical action for consolidation and transfer by the Panel.

### 2. Convenience of the Parties and Witnesses

The convenience of the Parties and the witnesses will be enhanced by transfer and consolidation to one jurisdiction. Each of these related actions will require discovery that

will inevitably be voluminous and overlapping across the actions. The consolidation of these cases in one jurisdiction will conserve resources for all of the Parties as well as the judiciary.

        3.    <u>Just and Efficient Conduct of the Litigation</u>

Due to the overlapping, and in some cases identical, nature of the allegations and claims against the Defendants, the transfer and consolidation of these matters to one jurisdiction will promote the just and efficient conduct of the litigation. Centralization will aid in eliminating duplicative discovery and motion practice, preventing conflicting rulings on pretrial matters, and conserve the resources of the Parties and the judiciary. *In re Autobody Shop Antitrust Litig.,* 37 F. Supp. 3d 1388, 1391 (J.P.M.L. 2014). Therefore, because each of the elements of 28 U.S.C. 1407(a) have been met, consolidation is appropriate. The only remaining issue is where to transfer these cases.

    **B.**    **The Districts of Missouri and Minnesota are Most Appropriate**

Certainly, each jurisdiction proposed for consideration is extraordinarily capable of managing this matter. However, two stand out as the best options – the Western District of Missouri and the District of Minnesota.

        1.    <u>Western District of Missouri</u>

Transfer to the Western District of Missouri is ideal due to the presence of certain Defendants, its geographically central location, and its judicial experience. Two of the major Defendants, Bass Pro Shops and Cabela's, are both headquartered in the Western District of Missouri. Plaintiffs have alleged that these two retail Defendants were instrumental in moving this conspiracy along and garnering support among co-

4

conspirators. Moreover, the presence of these two Defendants in one district indicates that many of the documents and witnesses will be located in the Western District of Missouri. The Panel often selects districts where the defendants are headquartered. *See, e.g., In re Chocolate Confectionary Antitrust Litig.,* 542 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) (selecting district because of defendant's headquarters).

The Panel has frequently recognized that a geographically central location is a benefit when determining a transferee district. And in fact, the Panel has, in previous cases, indicated that the Western District of Missouri is an appropriate transferee district because it "presents geographically central and accessible venue for this nationwide litigation." *In re T-Mobile Customer Data Sec. Breach Litig.,* 576 F. Supp. 3d 1373, 1375 (J.P.M.L. 2021).

Finally, Chief Judge Phillips, currently presiding over the *Dunkin* action filed in the Western District of Missouri, is an experienced and accomplished judge. She has been on the bench for twenty years and has overseen MDLs throughout her tenure and the Panel has previously recognized her experience and ability to manage large litigations. *See, e.g., In re Folgers Coffee Mktg. & Sales Practices Litig.,* 532 F. Supp. 3d 1416, 1417 (J.P.M.L. 2021). Thus, this litigation should be sent to the Western District of Missouri.

    2.  <u>District of Minnesota</u>

Alternatively, the Panel should send the matters to the District of Minnesota. The coordinating Defendant in this matter, the Archery Trade Association, is located in New Ulm, Minnesota, and, like the Western District of Missouri, the District of Minnesota is also geographically centrally located. The District of Minnesota has a history of

managing nationwide antitrust cases – including three that are pending currently. *See, e.g. In re Cattle & Beef Antitrust Litig.,* No. 0:22-md003031 JRT-JFD; *In re Pork Antitrust Litig.,* No. 0:18-cv-01776-JRT-JFD; and *In re Granulated Sugar Antitrust Litig.,* No. 0:24-md-03110-JWB-DTS. Moreover, the cases in this matter have been assigned to Judge Provinzino, a capable and accomplished jurist, who brings energy and enthusiasm to the bench. Therefore, the District of Minnesota would be another outstanding choice for the centralization of these matters.

## IV.   CONCLUSION

For the reasons detailed above, the Panel should consolidate these matters and transfer them to a single district for management, either the Western District of Missouri or the District of Minnesota.

Dated: August 13, 2025                    Respectfully submitted,

*/s/ Amanda M. Williams*
Amanda M. Williams (MN #0341691)
**BASSFORD REMELE**
*A Professional Association*
100 South Fifth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 333-3000
Fax: (612) 333-8829
Email: awilliams@bassford.com

*Counsel for Plaintiff Brock Montpetit*