**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| **IN RE: ARCHERY PRODUCTS ANTITRUST LITIGATION** | **MDL NO. 3160** |
|---|---|

**RESPONSE IN SUPPORT OF TRANSFER OF THE *JANOCHOSKI* ACTION AND THE RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407**

## I. INTRODUCTION

Plaintiff Alex Janochoski ("Plaintiff" or "Janochoski") files this memorandum of law in support of his Response to the Motion to Transfer Related Actions for Consolidated or Coordinated Pretrial Proceedings. Plaintiff supports centralization of his Action and the Related Actions for consolidated proceedings in the District of Minnesota or, in the alternative, the District of Colorado.

In addition to the *Janochoski* action filed in the District of Minnesota, five additional actions have been filed in the District of Minnesota,[1] three in the District of Colorado,[2] two in the District of Utah,[3] two in the Western District of Missouri,[4] one in the Middle District of

[1] *Babst v. Archery Trade Ass'n., Inc., et al.*, No. 0:25-cv-02721-LMP-ECW (D. Minn.); *Simcik v. Archery Trade Ass'n., Inc., et al.*, No. 0:25-cv-02875-LMP-JFD (D. Minn.); *Vale v. Hoyt Archery, Inc., et al.*, No. 0:25-cv-03110-LMP-ECW (D. Minn.); *Swails v. Archery Trade Ass'n., Inc., et al.*, No. 0:25-cv-03146-LMP-ECW (D. Minn.); and *Langley, et al. v. Bowtech, Inc., et al.*, No. 0:25-cv-03190-PJS-EMB (D. Minn.).

[2] *Sabatini, et al. v. Hoyt Archery, Inc., et al.*, No. 1:25-cv-02355-RMR (D. Colo.); *Goodall, et al. v. Hamskea Archery Solutions LLC, et al.*, No. 1:25-cv-02506 (D. Colo.); *Milby v. Hamskea Archery Solutions LLC, et al.*, No. 1:25-cv-02507 (D. Colo.).

[3] *Santarlas v. Hoyt Archery, Inc., et al.*, No. 2:25-cv-00436-DBB-DBP (D. Utah); *Close v. Hoyt Archery, Inc., et al.*, No. 2:25-cv-00617-JNP (D. Utah).

[4] *Dunkin v. Bowtech, LLC, et al.*, No. 4:25-cv-00546-BP (W.D. Mo.); *Carollo v. Bowtech, Inc., et al.*, No. 4:25-cv-00631 (W.D. Mo.).

Tennessee,[5] one in the Western District of Pennsylvania,[6] one in the Eastern District of Pennsylvania,[7] and one in the Western District of Wisconsin[8] (collectively all sixteen cases separate from Plaintiff's are referred to herein as the "Related Actions").

*Janochoski* and the Related Actions all allege that Defendants[9]—the Archery Trade Association ("ATA"), which is located in Minnesota, along with a number of archery product manufacturers, distributors, retailers, and certain software companies—unlawfully conspired to artificially increase, maintain, or stabilize the retail prices of archery products in the United States in violation of the Sherman Act.

Plaintiff Shawn Butter ("Movant"), in the Western District of Pennsylvania action, filed a Motion to Transfer and Centralize the actions in the Western District of Pennsylvania. Plaintiff agrees with Movant that centralization of the actions is appropriate. However, the District of Minnesota is a more appropriate venue for centralization of all the Related Actions for several reasons: (1) of the actions filed, more have been filed in the District of Minnesota than any other district (six); (2) Defendant ATA is headquartered in New Ulm, Minnesota; (3) Minnesota is a centrally located state and is a convenient location for a case involving evidence located from coast to coast; (4) the District of Minnesota has ample resources to manage multidistrict litigation efficiently; (5) the assigned U.S. District Judge, the Honorable Laura M. Provinzino, is an

---

[5] *Hansen v. Archery Trade Ass'n., Inc., et al.*, No. 3:25-cv-00779-AAT (M D. Tenn.).

[6] *Butter v. Archery Trade Ass'n., Inc., et al.*, No. 2:25-cv-01004-MJH (W.D. Pa.).

[7] *Hernandez Diaz, et al. v. Bowtech, Inc., et al.*, No. 5:25-cv-04277-CH (E.D. Pa.).

[8] *Montpetit v. Hoyt Archery, Inc., et al.*, No. 3:25-cv-00653-AMB (W.D. Wisc.).

[9] Defendants named in Janochoski's action are: Hoyt Archery. Inc.; Archery Trade Association, Inc.; Bowtech, Inc.; BPS Direct, LLC d/b/a Bass Pro Shops; Cabela's LLC; Dick's Sporting Goods, Inc.; Jay's Sporting, Inc. d/b/a Jay's Sporting Goods; Kinsey's Outdoors, Inc.; Lancaster Archery Supply, Inc.; Mathews Archery, Inc.; Neuintel LLC d/b/a Pricespider f/k/a Oris Intelligence; Precision Shooting Equipment, Inc.; and TrackStreet, Inc.

accomplished jurist who has yet to oversee a multidistrict litigation ("MDL"); and (6) Minnesota is also home to many thousands of archery enthusiasts.

## II. BACKGROUND

On May 30, 2025, the first of the Related Actions, *Santarlas v. Hoyt Archery, Inc., et al.*, No. 2:25-cv-00436 (D. Utah), was filed in the District of Utah. On June 27, 2025, the second of the Related Actions, *Babst v. Archery Trade Ass'n., Inc., et al.*, No. 0:25-cv-02721-LMP-ECW (D. Minn.), was filed in the District of Minnesota. Plaintiff filed the *Janochoski* action on July 7, 2025, which was the third of the Related Actions.

The *Janochoski* action and the Related Actions all involve common questions of law and fact—they allege that Defendants engaged in an unlawful contract, combination, or conspiracy to fix the prices of Archery Products sold throughout the United States. *Janochoski* and the Related Actions allege that Defendants acted collectively to implement and vigorously enforce minimum advertised price ("MAP") policies throughout the industry after becoming concerned that price competition within the industry was driving prices down and impacting profit margins for manufacturers and retailers. *Janochoski* and the Related Actions further allege that Defendants engaged in a continuous and multi-faceted exchange of competitively sensitive information, which further suppressed price competition and permitted Defendants to monitor each other's adherence to the conspiracy. Finally, *Janochoski* and the Related Actions emphasize the role of the ATA—the primary trade association for the Archery Products industry and its exclusive membership consisting of manufacturers, distributors, retailers, and other participants in the supply chain for Archery Products – which served as a hub of the conspiracy from its headquarters in New Ulm, Minnesota.

## III. ARGUMENT

### A. Centralization is Proper

28 U.S.C. § 1407 provides for the transfer and consolidation of actions pending in different districts to a single federal district court when such actions involve one or more common questions of fact and it is determined that transfer of such proceedings will benefit the convenience of parties and witnesses and promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). Those standards are met here.

The *Janochoski* action and the Related Actions all involve common questions of fact. The consolidation and transfer sought involves (currently) seventeen putative nationwide class actions, each alleging that Defendants engaged in an unlawful contract, combination, or conspiracy to fix the prices of Archery Products sold throughout the United States. Common questions of fact among the actions include:

- Whether Defendants and their co-conspirators engaged in a contract, combination, or conspiracy to raise, fix, maintain, or stabilize prices of Archery Products sold in interstate commerce in the United States in violation of federal antitrust laws;
- Whether Defendants agreed to unreasonably restrain trade in violation of federal antitrust laws;
- The identity of the participants of the alleged conspiracy;
- The scope and duration of the alleged conspiracy;
- The acts performed by Defendants and their co-conspirators in furtherance of the alleged conspiracy;
- The effect of Defendants' alleged conspiracy on the prices of Archery Products sold in the United States during the Class Period;
- Whether the conduct of Defendants and their co-conspirators, as alleged, caused injury to the business or property of Plaintiff and other members of the Class;

- Whether Plaintiff and other members of the Class are entitled to, among other things, injunctive relief and, if so, the nature and extent of such injunctive relief;
- The appropriate class-wide measure of damages.

Additionally, the convenience of parties and witnesses is facilitated by transfer and consolidation. The District of Minnesota possesses unique characteristics that set it apart from any other district regarding the relative convenience of the parties and witnesses involved. Defendant ATA is headquartered in New Ulm, Minnesota, which is in the District. Document discovery regarding the ATA membership, board of directors, trade shows, and communications between association members will necessarily center at ATA's headquarters in New Ulm, Minnesota. Many witnesses common to the actions are located in the District and can be deposed there regarding the alleged anticompetitive conduct. St. Paul—where Judge Provinzino's chambers are located—is a convenient location for all parties and counsel; it is centrally located in the nation, served by major air carriers from across the country, and can provide coordinated access to documents and witnesses already located there.

### B. <u>The District of Minnesota is the Most Appropriate Forum for Centralization</u>

#### 1. Six of Seventeen Actions Have Been Filed in the District of Minnesota

As mentioned above, there have been seventeen total actions filed. Six out of the seventeen were filed in the District of Minnesota.[10] The Judicial Panel on Multidistrict Litigation ("JPML") has held that a transferee district is appropriate "where an action is already pending" and that district "provides an accessible, metropolitan location." *In re Rhodia S.A., Secs. Litig.*, 398 F.

---

[10] *See Janochoski*, No. 0:25-cv-02788-LMP-ECW (D. Minn.); *Babst*, No. 0:25-cv-02721-LMP-ECW (D. Minn.); *Simcik*, No. 0:25-cv-02875-LMP-JFD (D. Minn.); *Vale*, No. 0:25-cv-03110-LMP-ECW (D. Minn.); *Swails*, No. 0:25-cv-03146-LMP-ECW (D. Minn.); and *Langley*, No. 0:25-cv-03190-PJS-EMB (D. Minn.).

Supp. 2d 1359, 1360 (J.P.M.L. 2005); *see also In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 543 (J.P.M.L. 1975) (transferring action to forum where "[m]ore actions are pending in that district than in any other federal district"). This alone shows that the District of Minnesota makes the most sense as the venue for these consolidated actions.

**2. The ATA is Headquartered and at Home in Minnesota**

The ATA is the organizing entity in Defendants' conspiracy. As detailed extensively in the *Janochoski* and Related Actions, all of the Defendants are members of the ATA, much of the intra-Defendant communication through which the conspiracy was effectuated was made by the ATA and through official ATA channels, and the ATA played a central role in creating and monitoring the industry-wide MAP policies that artificially inflated the price of Archery Products.[11] The ATA is headquartered and based in New Ulm, Minnesota.[12] In determining the appropriate transferee venue, the location of ATA's headquarters and base of operations in the District of Minnesota is a strong factor supporting the selection of that district. *See, e.g.*, *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d 1359, 1363 (J.P.M.L. 2020) (transferring to district conveniently located near defendant's headquarters); *In re Nissan N. Am., Inc., Odometer Litig. (II)*, 542 F. Supp. 2d 1367, 1369 (J.P.M.L. 2008) (ordering transfer to a district where defendant's headquarters were located and where relevant discovery would likely be found). That a key Defendant with access to readily identifiable and relevant information is located in Minnesota strongly supports consolidation and transfer to the District of Minnesota.

---

[11] *See, e.g., Janochoski,* ECF No. 1 ¶¶ 61-134.

[12] *See Janochoski*, ECF No. 1 ¶ 45.; *see also ATA Bylaws and Conduct* § 2.01, ARCHERY TRADE ASSOCIATION, https://archerytrade.org/about-ata/bylaws-and-conduct/ (last visited July 22, 2025) ("The Corporation's principal executive office will be located in New Ulm, Minnesota").

**3. The District of Minnesota is a Centrally Located and Convenient Location for a Case Involving Evidence Located from Coast to Coast**




The above map shows the locations of the headquarters for each of the thirteen Defendants named in the *Janochoski* action. Because the Defendants are spread across the United States, Minnesota would serve as a convenient, geographically central location. The JPML has previously found the District of Minnesota to be a geographically central district. *See In re Operation of Missouri River Sys. Litig.*, 277 F. Supp. 2d 1378, 1379 (J.P.M.L. 2003) ("We note that given the distribution of the parties and actions in this docket, the Minnesota forum is an accessible and geographically convenient district"); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) (selecting Minnesota because of the "varied

locations of parties and witnesses in this docket and the geographic dispersal of pending actions"). Accordingly, this factor supports consolidation and transfer to the District of Minnesota.

#### 4. The District of Minnesota has Ample Resources to Manage Multidistrict Litigation Efficiently

The relative docket conditions where the Related Actions have been filed further support consolidation and transfer to the District of Minnesota. Although as of August 1, 2025, the District of Minnesota has seven (7) active MDL matters, the seven active MDLs in the District of Minnesota are assigned to six distinct judges.[13] Judge Provinzino, who is assigned to *Janochoski*'s action, does not have an active MDL assigned to her. Therefore, there are no concerns with regard to her ability to take on this MDL. *Cf. In re TikTok, Inc., Minor Priv. Litig.*, 776 F. Supp. 3d 1349, 1351 (J.P.M.L. 2025) (assigning MDL to Judge Wu in part because he "is not currently presiding over an MDL"); *In re: Hawaiian & Guamanian Cabotage Antitrust Litig.*, 571 F. Supp. 2d 1379, 1380 (J.P.M.L. 2008) (assigning MDL to Judge Zilly in part because another proposed judge "already has two current MDLs assigned to him").

The District of Minnesota is also no stranger to nationwide antitrust class action MDLs such as *Janochoski* and the Related Actions. The District is currently the forum for *In re Cattle & Beef Antitrust Litig.*, No. 0:22-md-03031 (JRT/JFD), *In re Pork Antitrust Litig.,* No. 0:18-cv-01776 (JRT/JFD), and *In re Granulated Sugar Antitrust Litig.,* No. 0:24-md-03110-JWB-DTS. The District's significant MDL experience further supports the consolidation of Related Actions and the transfer to the District of Minnesota.

---

[13] MDL Statistics Report – Distribution of Pending MDL Dockets by District (August 1, 2025), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-1-2025.pdf (last visited August 13, 2025). The Western District of Pennsylvania has three MDLs, the Eastern District of Pennsylvania has seven MDLs, the Middle District of Tennessee has one MDL, the Western District of Missouri has two MDLs, and both the District of Utah and the District of Colorado have none.

Movant suggest that the Western District of Pennsylvania has more favorable docket conditions because, *inter alia*, the District of Minnesota has more cases pending per judgeships. It bears noting that this statistic is significantly skewed by *In re Bair Hugger Forced Air Warming Devices Prods Liab. Litig.*, No. 0:15-md-02666-JNE-DTS, which consists of over 8,000 individual pending cases, all of which are centralized in front of one judge.[14] Accordingly, the relative docket conditions support transfer to the District of Minnesota.

**5. Judge Provinzino is an Accomplished Jurist and Readily Capable of Managing These Actions**

Judge Laura M. Provinzino has been a Federal District Court Judge since September 2024. Before that, she served as an Assistant United States Attorney in the District of Minnesota for fourteen years, handling a multitude of complex and high-profile cases. Judge Provinzino also spent four years as a civil practitioner, litigating medical malpractice and product liability cases. Judge Provinzino is an accomplished jurist and is fully capable of taking on these consolidated actions.

Additionally, Judge Provinzino has not yet had the opportunity to preside over an MDL.[15] Consolidating and transferring the Related Actions to the District of Minnesota will provide Judge Provinzino the opportunity to hear an MDL matter. The JPML has favored assigning MDL matters to judges who have yet to preside over one. *See, e.g.*, *In re GoodRx & Pharmacy Benefit Manager Antitrust Litig. (No. II)*, 776 F. Supp. 3d 1346, 1348 (J.P.M.L. 2025) ("We assign the litigation to Judge Mary S. McElroy, a capable jurist who presides over all four cases in the District of Rhode

---

[14] *See* MDL Statistics Report *supra* note 13 at 2.

[15] Judge Provinzino is assigned to a case that has been stayed pending a decision of the JPML on whether to consolidate and transfer. *See FCA US LLC*, No. 24-CV-4041 (LMP/TNL), 2025 WL 314966 (D. Minn. Jan. 28, 2025). The parties in that case have moved for transfer to two different districts, neither of which is the District of Minnesota.

Island and has not yet had the opportunity to preside over an MDL."); *In re BPS Direct, LLC, & Cabela's, LLC, Wiretapping Litig.*, 677 F. Supp. 3d 1363, 1365 (J.P.M.L. 2023) ("We assign the litigation to Judge Mark A. Kearney, an able jurist who has not yet had the opportunity to preside over an MDL."); *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d 1359, 1363 (J.P.M.L. 2020) ("We are confident that Judge Edmond E. Chang, who has not yet had the opportunity to preside over an MDL, will steer this litigation on a prudent and expeditious course."); *In re Atrium Med. Corp. C-Qur Mesh Prods. Liab. Litig.*, 223 F. Supp. 3d 1355, 1357 (J.P.M.L. 2016) ("By selecting the Honorable Landya B. McCafferty to preside over this litigation, we are selecting a jurist with the willingness and ability to handle this litigation, but who has not yet had the opportunity to preside over an MDL").

Judge Provinzino's knowledge as a judge and readiness to preside over an MDL for the first time both support transfer to the District of Minnesota.

**6. Minnesota is One of the Most Popular States for Archery and Bowhunting**

Finally, Minnesota consistently ranks high in popularity for bowhunting and the number of bowhunters among the states.[16] The map below depicts the numerous bow shops, clubs, and archery ranges located just around the Twin Cities.

---

[16] *States with the Most Bow Hunters*, 24/7 WALL ST, https://247wallst.com/special-report/2024/01/31/states-with-the-most-bow-hunters/ (last visited July 23, 2025) (ranking Minnesota 12th of 40 ranked states with 57,587 bowhunters as of 2021); 2021 STATE-BY-STATE BOWHUNTER NUMBERS, ARCHERY TRADE ASSOCIATION, https://archerytrade.org/wp-content/uploads/2023/03/2021-Bowhunter-Data-1.pdf (last visited July 23, 2025) (showing 104,711 bowhunters in Minnesota during 2021–22 season, ranking 11th out of 50 states).




As evidenced by this fact, as well as the headquarters of the ATA in Minnesota, the District of Minnesota has a substantial connection to the subject matter of this case and a significant interest in its adjudication. Accordingly, evidence involving a substantial portion of the proposed nationwide class is likely to be present in the District of Minnesota. *See In re Air Crash Disaster Near Silver Plume, Colo., on Oct. 2, 1970*, 352 F. Supp. 968, 969 (J.P.M.L. 1972) (selecting a District in which many of the plaintiffs and prospective plaintiffs were domiciled). This further supports the centralization and transfer to the District of Minnesota.

## IV. CONCLUSION

For the foregoing reasons, the Panel should centralize these actions and transfer them to the District of Minnesota.

If the JPML does not select the District of Minnesota, Plaintiff requests that the Panel transfer the Related Actions to the District of Colorado. Three actions have been filed in the

District of Colorado.[17] Like the District of Minnesota, the District of Colorado is centrally located in relation to the alleged coast-to-coast conspiracy. And like Judge Provinzino, the Honorable Regina M. Rodriguez—the judge currently assigned to the Related Actions in the District of Colorado—is an accomplished and capable jurist who has no active MDL before her and appears to have yet to preside over an MDL.[18] Consequently, the District of Colorado would be an appropriate alternative forum for this litigation.

Dated: August 13, 2025

Respectfully submitted,

LOCKRIDGE GRINDAL NAUEN PLLP

s/*Jessica N. Servais*
Heidi M. Silton (#025759X)
Jessica N. Servais (#0326744)
Joseph C. Bourne (#0389922)
Michael J.K.M. Kinane (#0504621)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com
mjkmkinane@locklaw.com

**ATTORNEYS FOR**
**PLAINTIFF ALEX JANOCHOSKI**

---

[17] *Sabatini, et al. v. Hoyt Archery, Inc., et al.*, No. 1:25-cv-02355-RMR (D. Colo.); *Goodall v. Hamskea Archery Solutions LLC, et al.*, No. 1:25-cv-02506 (D. Colo.); *Milby v. Hamskea Archery Solutions LLC, et al.*, No. 1:25-cv-02507 (D. Colo.).

[18] *See* MDL Statistics Report *supra* note 13.