BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE ARCHERY PRODUCTS ANTITRUST LITIGATION | MDL No. 3160 |

**PLAINTIFFS SANTARLAS AND GOODALLS' JOINT RESPONSE
TO THE MOTION TO TRANSFER ACTIONS FOR COORDINATED OR
CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiff Joseph Santarlas[1], and Plaintiffs Tanya and Justen Goodall[2] (together, the "Joint Plaintiffs"), respectfully submit this response to the Motion to Transfer for Coordinated or Consolidated Pretrial Proceedings (the "Transfer Motion") pursuant to 28 U.S.C. § 1407.

The Joint Plaintiffs agree that transfer and centralization is appropriate for the Related Actions[3] and any future tag-along actions. However, as explained below, the Panel should transfer and centralize these actions in the District of Colorado or, alternatively, the District of Utah.

---

[1] *Santarlas v. Hoyt Archery, Inc. et al.*, No. 25-cv-436 (D. Utah 2025).

[2] *Goodall v. Hamskea Archery Sols. LLC et al.*, No. 25-cv-2506 (D. Colo. 2025).

[3] At present, the Related Actions are:
1. *Santarlas v. Hoyt Archery, Inc. et al.*, No. 25-cv-436 (D. Utah 2025).
2. *Babst v. Archery Trade Ass'n, Inc. et al.*, No. 25-cv-2721 (D. Minn. 2025).
3. *Janochoski v. Hoyt Archery, Inc. et al.*, No. 25-cv-2788 (D. Minn. 2025).
4. *Hansen v. Archery Trade Ass'n, Inc. et al.*, No. 25-cv-779 (M D. Tenn. 2025).
5. *Dunkin v. Bowtech, LLC et al.*, No. 25-cv-546 (W.D. Mo. 2025).
6. *Simcik v. Archery Trade Ass'n, Inc. et al.*, No. 25-cv-2875 (D. Minn. 2025).
7. *Butter v. Archery Trade Ass'n, Inc. et al.*, No. 25-cv-1004 (W.D. Pa. 2025).
8. *Close v. Hoyt Archery, Inc. et al.*, No. 25-cv-617 (D. Utah 2025).
9. *Hernandez Diaz v. Bowtech Inc. et al.*, No. 25-cv-4277 (E.D. Pa. 2025).
10. *Sabatini v. Hoyt Archery, Inc. et al.*, No. 25-cv-2355 (D. Colo. 2025).
11. *Vale v. Hoyt Archery, Inc. et al.*, No. 25-cv-3110 (D. Minn. 2025).
12. *Montpetit v. Hoyt Archery Inc. et al.*, No. 25-cv-653 (W.D. Wis. 2025).
13. *Swails v. Archery Trade Ass'n et al.*, No. 25-cv-3146 (D. Minn. 2025).
14. *Langley v. Bowtech Inc. et al.*, No. 25-cv-3190 (D. Minn. 2025).
15. *Goodall v. Hamskea Archery Sols. LLC et al.*, No. 25-cv-2506 (D. Colo. 2025).
16. *Milby v. Hamskea Archery Sols. LLC et al.*, No. 25-cv-2507 (D. Colo. 2025).

The District of Colorado is the best forum for this multi-district litigation for **four** reasons:

*First*, there is a growing consensus among the plaintiffs in the Related Actions—including Plaintiff Shawn Butter, who initially petitioned for centralization in the Western District of Pennsylvania[4]—to centralize these proceedings in the District of Colorado. This consensus so far extends to all plaintiffs with Related Actions in the District of Colorado, all plaintiffs with Related Actions in the District of Utah, and even the Movant, Plaintiff Shawn Butter, who originally moved for centralization in the Western District of Pennsylvania but now agrees to centralize in the District of Colorado. Also among these plaintiffs is Joseph Santarlas, who brought the first-filed action setting forth the factual and legal theories common to every other Related Action. Plaintiff Santarlas' action was the product of an independent investigation by his counsel, without the benefit of any media reports or prior government enforcement actions. All other Related Actions followed Santarlas' action by at least four weeks, and each Related Action names virtually the same defendants, seeks to represent essentially the same class, brings the same core antitrust claims, requests almost identical relief, and includes the same fundamental allegations as Santarlas. Indeed, several other Related Actions go so far as to essentially copy-and-paste vast swaths of Santarlas' complaint.

As a result of this coordination, plaintiffs in at least six of the Related Actions now consent to centralization in the District of Colorado to streamline scheduling and discovery. These plaintiffs have also streamlined these proceedings for the benefit of the Panel and outright removed at least one judicial district from the debate for a transferee forum, with Plaintiff Butter no longer seeking

---

17. *Carollo v. Bowtech, LLC et al.*, No. 25-cv-631 (W.D. Mo. 2025).

[4] Plaintiff Shawn Butter, the Transfer Motion movant, will amend his request on reply to seek centralization in the District of Colorado rather than the Western District of Pennsylvania.

centralization in the Western District of Pennsylvania, and Plaintiffs Santarlas and Close consenting to centralization of their respective actions outside the District of Utah. "The Panel has often stated that centralization under Section 1407 should be the last solution after considered review of all other options. These options include . . . agreement by plaintiffs to voluntarily dismiss their actions in favor of one district[.]" *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379-80 (J.P.M.L. 2012) (quotations omitted). While the Joint Plaintiffs do not presently anticipate that all plaintiffs across these cases would dismiss and refile in the District of Colorado, the District does represent a significant and growing consensus jurisdiction.

**Second**, the District of Colorado is the most convenient and accessible forum of any Related Action, with significant ties to the subject matter of the litigation, more so than the District of Minnesota or the Western District of Missouri. Defendant Hamskea Archery Solutions LLC is headquartered near Denver, Colorado, ensuring that the trial court will have subpoena power over the executives and employees of at least one defendant and can compel their live (rather than videotaped) testimony for purposes of trial. (Conversely, and as discussed in more detail below, the same is not true of Minnesota. While the Archery Trade Association is nominally located in Minnesota, the relevant witnesses (its members named as Defendants) and conspiratorial events are located and occurred elsewhere.) Colorado is also a major state for archery and bowhunting, as it is widely considered the best in the nation for elk hunting,[5] and it is home to USA Archery, the national governing body for Olympic and international archery competitions. Denver, where the District of Colorado sits, is a major U.S. city with ample hotel space and is nationally accessible

---

[5] *See* Teri Williams, *The Best States for Elk Hunting: Plan Your Hunt*, HUNTWISE (Jan. 27, 2025), https://huntwise.com/field-guide/elk/best-states-for-elk-hunting.

3

by the Denver International Airport, which is the largest airport in any relevant judicial district.[6] For comparison, Denver's airport offers approximately 600 more departures per day than the Minneapolis-Saint Paul airport or the Kansas City airport.[7] The airport is unique in offering direct flights to the home forum of every Related Action, as well as direct flights within driving distance of every defendants' headquarters and counsel.[8] And because the Related Actions seek to represent a class across the entire United States—including the western and non-contiguous states and territories—Denver is just as, if not more geographically central than Minneapolis, Kansas City, or any other potential forum city.

*Third*, the District of Colorado is uniquely positioned to handle this centralized litigation. Unlike most other potential forums, the District of Colorado does not currently oversee an MDL.[9] In contrast, the District of Minnesota oversees eight MDLs—equaling *more than one MDL per authorized judgeship*, despite the same number of authorized judgeships as the District of Colorado. Relatedly, from March 2024 to March 2025, the District of Minnesota received the most civil filings per judgeship of any potential forum, including 132 more civil filings per judgeship

---

[6] *See* Michelle Baran, *These Are the 20 Busiest Airports in the United States*, AFAR (Aug. 9, 2024), https://www.afar.com/magazine/busiest-airports-in-the-us.

[7] Compare estimated 981 daily departures from Denver DEN, with 383 from Minneapolis MSP, and 126 in Kansas City MCI. DIRECTFLIGHTS.COM, https://www.directflights.com/direct-flight-routes-us-airports (last visited Aug. 11, 2025).

[8] *See Domestic Nonstop Destinations*, FLY DENVER, https://www.flydenver.com/nonstop-routes/ (last visited Aug. 6, 2025).

[9] Pending MDLs by district: D. Minn. (8), E.D. Pa. (7), W.D. Pa. (3), W.D. Mo. (2), M.D. Tenn. (1), D. Colo. (0), W.D. Wis. (0), and D. Utah (0). MDL STATS. REP., DISTRIB. OF PENDING MDL DOCKETS BY DIST., AUG. 2025, U.S. CTS., https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-1-2025.pdf.

than the District of Colorado.[10] And as of March 2025, the District of Minnesota saw nearly *three times* as many pending cases per judgeship than the District of Colorado, with civil actions in the District of Minnesota generally requiring over a full month longer to resolve.[11]

These docket conditions highlight the District of Colorado as an ideal forum to minimize delays and promote procedural efficiency.[12] *See In re GoodRx & Pharm. Benefit Manager Antitrust Litig. (No. II)*, 776 F. Supp. 3d 1346, 1348 (J.P.M.L. 2025) (centralizing in a "relatively underutilized transferee district that presently has no pending MDLs"); *In re RealPage, Inc., Rental Software Antitrust Litig.*, 669 F. Supp. 3d 1372, 1373 (J.P.M.L. 2023) (same).

***Fourth*** and finally, *Sabatini*—the first Related Action filed in the District of Colorado—is assigned to the Honorable Regina M. Rodriguez, a capable jurist with more than four years of experience as a district judge but who has not yet presided over an MDL. *See In re Clearview AI, Inc., Consumer Priv. Litig.*, 509 F. Supp. 3d 1368, 1369-70 (J.P.M.L. 2020) ("Centralization in this district also provides us the opportunity to assign the litigation to a capable jurist who has not yet presided over an MDL."). Furthermore, if Judge Rodriguez does not wish to oversee this MDL, the District of Colorado contains many other well-qualified jurists.

---

[10] *See* Nat'l Jud. Caseload Profile, Mar. 2025, U.S. Dist. Cts., https://www.uscourts.gov /sites/default/files/document/ fcms_na_distprofile0331.2025.pdf.

[11] As of March 31, 2025, the District of Colorado had 573 pending cases per judgeship, compared to 1,601 cases in the District of Minnesota; and the District of Colorado's median time from civil filing to disposition was 7.4 months, compared to 8.7 months in the District of Minnesota. *Id.*

[12] The District of Minnesota's caseload statistics are boosted by *In re Bair Hugger Forced Air Warming Devices Products Liability Litigation* (MDL No. 2666), but even before that MDL, the District of Minnesota saw much higher docket demands than the District of Colorado. Before the Panel centralized *Bair Hugger* in December 2015, for example, the District of Minnesota had 707 pending cases per judgeship, compared to just 442 pending cases in the District of Colorado. Nat'l Jud. Caseload Profile, Dec. 2015, U.S. Cts., https://www.uscourts.gov/sites/default/files/data _tables/fcms_district_profiles_december_2015.pdf.

For these reasons, and as further explained below, the Panel should centralize the Related Actions in the District of Colorado, as the most convenient, accessible, and prepared judicial district to efficiently handle these actions. Alternatively, the Panel should centralize the Related Actions in the District of Utah, as discussed below.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The Related Actions allege an antitrust price-fixing conspiracy in the U.S. archery industry. Each action names nearly identical defendants or related entities within the same corporate family as those in Plaintiff Santarlas' first-filed complaint.[13]

Each Related Action also arises from the same core set of facts. In general, the plaintiffs allege that the defendants conspired to artificially fix, raise, maintain, or stabilize the prices of Archery Products[14] in the United States, in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3). The plaintiffs allege that the cartel was orchestrated by the most prominent and influential Archery Products manufacturers, distributors, and retailers in the United States, and that the cartel is designed to artificially fix, raise, maintain, or stabilize prices and prevent price

---

[13] These Defendants are: Hoyt Archery, Inc., Archery Trade Association, Inc., Bowtech Inc., BPS Direct, LLC d/b/a Bass Pro Shops, Cabela's LLC, Dick's Sporting Goods, Inc., Jay's Sports, Inc. d/b/a Jay's Sporting Goods, Kinsey's Outdoors, Inc., Lancaster Archery Supply, Inc., Mathews Archery, Inc., Neuintel LLC d/b/a Pricespider f/k/a Oris Intelligence, Precision Shooting Equipment, Inc, and Trackstreet, Inc.
  Five Related Actions do not name Oris Intelligence or Trackstreet Inc. as defendants but include them as co-conspirators. *Babst* ¶ 3; *Hansen* ¶ 2; *Simcik* ¶ 3; *Swails* ¶ 3; *Langley* ¶ 2. *Dunkin* names an additional Missouri-based defendant: Rogers Sporting Goods Holdings, Inc.; and *Goodall* names an additional Colorado-based defendant: Hamskea Archery Solutions, LLC.

[14] "Archery Products" refers to products used by consumers for bowhunting or archery. Each Related Action alleges that Archery Products consists of five main product markets, submarkets, or cluster markets: (1) bows; (2) arrows; (3) arrowheads (or arrowpoints); (4) targets; and (5) accessories. *See Santarlas* ¶ 57; *see also Babst* ¶ 34; *Janochoski* ¶ 57; *Hansen* ¶ 32; *Dunkin* ¶ 1 n.1; *Simcik* ¶ 34; *Butter* ¶ 57; *Close* at 1 n.1; *Hernandez Diaz* ¶ 32; *Sabatini* ¶ 147; *Vale* ¶ 31; *Montpetit* ¶ 24; *Swails* ¶ 144; *Langley* ¶ 34; *Goodall* ¶ 59; *Milby* at 1 n.1; *Carollo* ¶ 1 (Related Actions defining "Archery Products" identically to *Santarlas*).

competition on Archery Products at the retail level. Further, the plaintiffs allege that one primary mechanism of the cartel is the widespread adoption, implementation, and enforcement of "minimum advertised pricing" policies ("MAPs"). These MAPs, the plaintiffs allege, represent an artificial price floor, or the "lowest price a retailer can advertise the products for sale," including "online or anywhere in print." *Santarlas* ¶ 3; *see also Janochoski* ¶ 3 (same); *Hansen* ¶ 4 (same); *Simcik* ¶ 6 (same).

According to the plaintiffs, the alleged conduct constitutes a *per se* violation of antitrust law, because direct competitors entered into a horizontal agreement to fix, raise, maintain, or stabilize prices. Specifically, the plaintiffs allege that direct competitors—such as Bass Pro Shops and Cabela's—entered into a horizontal agreement to pressure manufacturers (who are also horizontal competitors to one another) to adopt MAP policies in parallel and for the express purpose and effect of fixing, raising, maintaining, or stabilizing prices. This horizontal price-fixing agreement removes the competitive incentive for retailers to charge below MAP prices, in effect eliminating price discounting and competition for Archery Products. *See, e.g.*, *Santarlas* ¶ 2 ("[MAPs] eliminat[e] the 'race to the bottom' that would occur if retailers endlessly competed to reduce prices . . . .").

The Related Actions effectively seek the same monetary, declaratory, and injunctive relief as Plaintiff Santarlas' first-filed complaint,[15] on behalf of the same or essentially the same proposed class as Santarlas: All persons and entities residing in the United States or its territories that directly

---

[15] *Compare Santarlas* at 59-60, *with Babst* at 62-63, *Janochoski* at 74-75, *Hansen* at 45-46, *Dunkin* at 62, *Simcik* at 61-62, *Butter* at 53-54, *Close* at 50-51, *Hernandez Diaz* at 40-41, *Sabatini* at 59-60, *Vale* at 33-34, *Montpetit* at 54-55, *Swails* at 52-54, *Langley* at 62-64, *Goodall* at 59-60, *Milby* at 50-51, *and Carollo* at 46-47 (*Santarlas*, as the first-filed action, seeking the same monetary, declaratory, and injunctive relief as the other Related Actions).

7

purchased Archery Products manufactured or distributed by an Archery Trade Association member, at any point between January 1, 2014 and the present.[16]

The actions are all in the early stages of litigation, and with one exception, the defendants have yet to respond to any of the complaints. In *Santarlas*, Defendant Mathews Archery, Inc. has moved to dismiss the complaint in its entirety, or alternatively to dismiss all claims asserted against it. *See Santarlas v. Hoyt Archery, Inc. et al.*, No. 25-cv-00436, ECF No. 31 (D. Utah July 10, 2025). On July 17, 2025, the *Santarlas* Court entered a joint stipulation to stay proceedings for sixty days. *Id.* at ECF No. 44.

## II.   ARGUMENT

### A.   Centralization is Warranted Under 28 U.S.C. § 1407

Where multiple actions pending in different judicial districts concern common questions of fact and law, the actions should be centralized in one district for pretrial proceedings if transfer would further "the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Here, with seventeen actions across eight judicial districts, centralization is clearly warranted.

All parties who have filed motions or responses agree that the Related Actions "arise from the same factual milieu" and are expected to involve a significant number of common events, defendants, and witnesses. *In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1346 (J.P.M.L. 2007). The Related Actions also seek to represent essentially the same proposed class,

---

[16] *Compare Santarlas* ¶ 50, *with Babst* ¶ 160, *Janochoski* ¶ 50, *Hansen* ¶ 144, *Dunkin* ¶¶ 165-66, *Simcik* ¶ 161, *Butter* ¶ 160, *Close* ¶ 121, *Hernandez Diaz* at ¶ 132, *Sabatini* ¶ 51, *Vale* ¶ 107, *Montpetit* ¶ 132, *Swails* ¶ 160, *Langley* ¶ 160, *Goodall* ¶ 52, *Milby* ¶ 122, *and Carollo* ¶ 151 (*Santarlas*, as the first-filed action, seeking to represent the same nationwide class as the other Related Actions).

all alleging causes of action under Sections 1 and 3 of the Sherman Act. *See In re Cotton Yarn Antitrust Litig.*, 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004).

Further, because not all plaintiffs consent to a coordinated transfer, and because these plaintiffs are not subject to personal jurisdiction in Colorado, there is no "reasonable prospect" that Section 1404(a) could "eliminate the multidistrict character" of this litigation. *In re Geber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012).

With seventeen actions pending across eight districts, transfer and centralization would serve the convenience of parties and witnesses and promote the efficient adjudication of these cases. *See In re Broiler Chicken Grower Antitrust Litig. (No. II)*, 509 F. Supp. 3d 1359, 1360 (J.P.M.L. 2020) (centralizing five actions pending across five districts).

### B. The Panel Should Transfer the Related Actions to the District of Colorado

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; (2) the location of "relevant witnesses and evidence"; (3) the parties' preferences; and (4) the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation." *In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). Each of these factors supports transfer to the District of Colorado.

i. <u>The District of Colorado is more convenient and accessible than any other potential forum.</u>

Because this litigation involves an alleged nationwide conspiracy, the Panel should select a district that is "geographically central and readily accessible." *In re Deere & Co. Repair Servs.*

*Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (2022). With the defendants spread across the country,[17] the District of Colorado offers the most convenient and accessible forum.

The Denver International Airport offers an estimated 981 daily departures with 231 nonstop flights, the most by far of any Related Action's forum airport.[18] Moreover, as a proposed nationwide class action, the defendants, witnesses, and proposed class members for each Related Action are spread across the entire United States, *including the western and non-contiguous states and territories*. And after the *Goodall* and *Milby* complaints, at least one defendant is found in Colorado. Thus, the District of Colorado is just as, if not more "geographically central" than any other potential forum. *In re Deere*, 607 F. Supp. 3d at 1351.

In addition to its geographic accessibility, the District of Colorado is an especially convenient forum to oversee this complex antitrust litigation because of its relative docket demands. Unlike the District of Minnesota or the Western District of Missouri, the District of Colorado does not currently oversee an MDL.[19] By comparison, the District of Minnesota is overburdened by MDLs, presently overseeing eight MDLs—which amounts to more MDLs than authorized judgeships in the district. And in connection with these MDLs, the District of Minnesota saw personal injury filings in the health care and pharmaceutical category grow in 2024 by 132

---

[17] The defendants named in *Santarlas*, for example, are headquartered as follows: Hoyt Archery, Inc. (Salt Lake City, UT); Archery Trade Association, Inc. (New Ulm, MN); Bowtech Inc. (Eugene, OR); BPS Direct, LLC d/b/a Bass Pro Shops (Springfield, MO); Cabela's LLC (Sidney, NE); Dick's Sporting Goods, Inc. (Coraopolis, PA); Jay's Sports, Inc. d/b/a Jay's Sporting Goods (Clare, MI); Kinsey's Outdoors, Inc. (Mount Joy, PA); Lancaster Archery Supply, Inc. (Lancaster, PA); Mathews Archery, Inc. (Sparta, WI), Neuintel LLC d/b/a Pricespider f/k/a Oris Intelligence (Irvine, CA); Precision Shooting Equipment, Inc. (Tucson, AZ); and Trackstreet, Inc. (Las Vegas, NV).

[18] *See generally US Airports by the Number of Direct Flight Routes*, DIRECTFLIGHTS.COM, https://www.directflights.com/direct-flight-routes-us-airports (last accessed Aug. 12, 2025).

[19] *See* MDL STATS. REP., DISTRIB. OF PENDING MDL DOCKETS BY DIST., AUG. 2025, *supra* note 9.

percent in just one year.[20] From March 2024 to March 2025, the District of Minnesota received the most civil filings per judgeship of any other potential forum,[21] and as of March 2025, the District of Minnesota saw nearly *three times* as many pending cases per judgeship than the District of Colorado.[22] *See In re Am. Family Mut. Ins. Co.*, 416 F.Supp.2d 1346 (J.P.M.L. 2006) ("On balance, we are persuaded that the District of Colorado is preferable . . . . [C]entralization in this district permits the Panel to effect the Section 1407 assignment to a transferee district that is not currently assigned to other multidistrict litigation dockets.").

In light of these conditions, the District of Colorado is more convenient and accessible than any other district in which a Related Action has been filed.

        ii.    <u>Relevant witnesses and evidence are located in the District of Colorado.</u>

Relevant witnesses and evidence can also be found in the District of Colorado. The District is home to Hamskea Archery Solutions LLC, a named defendant with approximately thirty dealers throughout the state. And although witnesses for this proposed nationwide class action will be found in every state and territory, Colorado is unique as the home of USA Archery, the national governing body for Olympic, Paralympic, and World Championship archery competitors.[23]

Given the presence of USA Archery, which hosts or sanctions hundreds of annual events from their headquarters in Colorado Springs, the state of Colorado unsurprisingly ranks among the

---

[20] *See* U.S. DIST. CTS. — JUD. BUS. 2024, ADMIN. OFF. OF THE U.S. CTS., https://www.uscourts.gov/data-news/reports/statistical-reports/judicial-business-united-states-courts/judicial-business-2024/us-district-courts-judicial-business-2024

[21] *See* NAT'L JUD. CASELOAD PROFILE, MAR. 2025, *supra* note 10.

[22] *Id.*

[23] *See* USA ARCHERY, https://www.usarchery.org/about (last accessed Aug. 12, 2025).

11

most prominent states in the nation for archery and bowhunting. With vast public lands, the state is a prime destination for elk bowhunting. The Colorado Bowhunters Association actively lobbies on behalf of bowhunters and hosts events across the state year-round, and according to the state government, 20,000 students across 200 schools participate in the "Colorado Archery in the Schools Program" to incorporate archery into school curriculums.[24] In Denver, numerous archery and bowhunting businesses operate in close proximity to the District of Colorado.

**Figure 2: Map of Denver, CO with Archery Businesses Highlighted**[25]



---

[24] *Bring Archery to Your School*, COLO. PARKS & WILDLIFE, https://cpw.state.co.us/archery-schools (last accessed Aug. 12, 2025).

[25] GOOGLE MAPS, available at https://www.google.com/maps/ (last accessed Aug. 12, 2025).

Although the Archery Trade Association ("ATA") is located in Minnesota, the association's key witnesses—the ATA's *members*—are dispersed throughout the United States and its territories, including Colorado. Likewise, the ATA's Board of Directors is composed of representatives from a nationwide assortment of businesses, most or many of whom likely do not reside in Minnesota. Even the ATA's largest annual event, its tradeshow, is generally hosted outside of Minnesota.[26] In contrast, at least one defendant is headquartered in the District of Colorado, meaning the trial court (unlike in Minnesota) will have subpoena power over the executives and employees of the defendant and can compel their live (rather than videotaped) testimony for purposes of trial.

The ATA also publishes Colorado-specific contact details on its official website,[27] providing the email addresses of six state coordinators all presumably located in Colorado. And notably, the ATA is a "contributing partner" of USA Archery in Colorado.[28] With the ATA's support and presence in the state, USA Archery hosts many annual archery events and qualifiers in Colorado, and the ATA has even partnered with USA Archery for exclusive events at ATA Trade Shows.[29]

---

[26] The trade show was or will be hosted in Indianapolis, IN, for example, in 2023, 2025, and 2026. *See* Cassie Gasaway, *2023 ATA Trade Show Floor Roadmap*, ATA, https://archerytrade.org/ 2023-ata-trade-show-floor-roadmap/ (last accessed Aug. 12, 2025); Press Release, *Archery's Biggest Event of the Year*, ATA (Dec. 9, 2024), https://archerytrade.org/archerys-biggest-event-of-the-year-the-2025-ata-show-is-one-month-away/; *About the ATA Show*, ATA, https://archerytrade.org/about-the-ata-show/ (2025) (last accessed Aug. 12, 2025).

[27] *State Contacts*, ATA, https://archerytrade.org/contact-us/state-contacts/ (last accessed Aug. 12, 2025).

[28] *See USA Archery Sponsors*, USA ARCHERY, https://www.usarchery.org/about/sponsors (last accessed Aug. 12, 2025).

[29] *USA Archery Opens Registration for Its Newest Event*, USA ARCHERY (Aug. 16, 2021), https://www.usarchery.org/article/usa-archery-opens-registration-for-its-newest-event---the-2022-usa-archery-25-meter-shootout.

    iii. <u>A significant number of the parties, including the plaintiff of the first-filed action, prefer the District of Colorado.</u>

As discussed above, a partial consensus has formed among the plaintiffs to centralize in the District of Colorado. This includes the plaintiff in the first-filed action, all plaintiffs with actions in the District of Colorado, all plaintiffs with actions in the District of Utah, and the Movant, Plaintiff Shawn Butter, who moved for centralization in the Western District of Pennsylvania but now supports the District of Colorado. This coordination also means that plaintiffs in at least six of the Related Actions now consent to centralization in the District of Colorado. What is more, at least one fewer transferee district will be presented to the Panel, as Plaintiff Butter no longer seeks centralization in the Western District of Pennsylvania.

    iv. <u>The District of Colorado is well-equipped and experienced to handle this complex and multidistrict litigation.</u>

The District of Colorado possesses substantial resources to efficiently manage this multidistrict antitrust litigation. Three Related Actions are already pending in the District, and the District does not currently oversee an MDL. In comparison, the District of Minnesota oversees eight MDLs, and the Western District of Missouri oversees two MDLs. *See In re GoodRx & Pharm. Benefit Manager Antitrust Litig. (No. II)*, 776 F. Supp. 3d 1346, 1348 (J.P.M.L. 2025) (transferring actions to a "relatively underutilized transferee district that presently has no pending MDLs"). Moreover, the Honorable Regina M. Rodriguez, to whom at least one of the Related Actions has been assigned, is an experienced jurist capable of leading this MDL. The District contains other experienced jurists as well, who can manage this litigation if Judge Rodriguez does not wish to do so. *See, e.g.*, *In re Am. Family Mut. Ins. Co.*, 416 F. Supp. 2d 1346 (J.P.M.L. 2006) (centralizing in the District of Colorado under Section 1407).

In short, the District of Colorado is an ideal transferee district that will serve the convenience of the parties and their counsel.

C.    **In the Alternative, the Panel Should Centralize in the District of Utah**

If the Panel is not inclined to transfer and centralize the Related Actions in the District of Colorado, the District of Utah remains an appropriate and prepared district to manage this multi-district litigation. Like the District of Colorado, the District of Utah currently does not oversee an MDL, and the District is home to at least one defendant: Hoyt Archery, Inc. The Honorable Judge Barlow, to whom the *Santarlas* action has been assigned, is well-qualified to steer this MDL, as are other experienced jurists within the District if Judge Barlow does not wish to oversee this litigation. *See,* e.g., *In re The Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, No. 24-md-03102 (D. Utah 2024) (centralizing before Chief Judge Robert J. Shelby); *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, No. 20-md-02977 (E.D. Okla. 2020) (also centralizing before Chief Judge Shelby, sitting by designation).

**III.    CONCLUSION**

For the foregoing reasons, the Joint Plaintiffs respectfully request that the Panel transfer and centralize the Related Actions and any future tag-along actions in the District of Colorado.

Dated: August 13, 2025                    Respectfully submitted,

By: */s/ Gary I. Smith, Jr.*

Gary I. Smith, Jr.
**Hausfeld LLP**
580 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 633-4980
gsmith@hausfeld.com

In Kyung (Jane) Shin
Will Hanna
**Hausfeld LLP**
888 16th Street, N.W., Suite 600
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
jshin@hausfeld.com
whanna@hausfeld.com

David W. Kesselman
Amy T. Brantly
Abiel Garcia
**Kesselman, Brantly, Stockinger LLP**
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, CA 90266
Telephone: (310) 307-4555
Facsimile: (310) 307-4570
dkesselman@kbslaw.com
abrantly@kbslaw.com
agarcia@kbslaw.com

Joshua H. Grabar
Julia C. Varano
**Graber Law Office**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
jgrabar@grabarlaw.com
jvarano@grabarlaw.com

Jason L. Lichtman
**Lieff Cabraser Heimann & Bernstein, LLP**
250 Hudson Street
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
jlichtman@lchb.com

*Attorneys for Plaintiff Joseph Santarlas, Plaintiffs Tanya and Justen Goodall, and the Proposed Class*