**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: ARCHERY PRODUCTS
ANTITRUST LITIGATION** | **MDL No. 3160** |

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFF SHAWN BUTTER'S MOTION TO
TRANSFER AND CENTRALIZE RELATED ACTIONS FOR CONSOLIDATED OR
COORDINATED PRETRIAL PROCEEDINGS**

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................2

III.    LEGAL STANDARD...........................................................................................5

IV.     ARGUMENT .......................................................................................................6

        A.      Centralization Is Appropriate Under Section 1407................................6
        B.      The District of Utah Is the Proper District for Centralization ...............8
                1.      The District of Utah Is Convenient for All Parties ......................9
                2.      The District of Utah Is Less Congested than Alternative Forums.............11
                3.      The District of Utah Is Home to the First-Filed Action............................12
                4.      Judge Barlow Is Experienced and Well-Suited to Manage this
                        Action............................................................................................13

V.      CONCLUSION...................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Butter v. Archery Trade Ass'n, Inc. et al.*,
    No. 2:25-cv-01004-MJH (W.D. Pa. July 21, 2025)...................................................3

*Close v. Hoyt Archery, Inc.*,
    No. 2:25-cv-00617-JNP (D. Utah July 28, 2025) .......................................................3

*Dunkin v. Bowtech, LLC*,
    No. 4:25-cv-00546-BP (W.D. Mo. July 15, 2025) .....................................................3

*Goodall, et al. v. Hamskea Archery Solutions LLC, et al.*,
    No. 1:25-cv-02506 (D. Colo. Aug. 12, 2025) ...........................................................4

*Hansen v. Archery Trade Ass'n Inc.*,
    No. 3:25-cv-00779-AAT (M.D. Tenn. July 14, 2025)................................................3

*Hernandez Diaz et al. v. Bowtech, Inc.*,
    No. 2:25-cv-04277-CH (E.D. Pa. July 29, 2025)......................................................3

*In re: Aggrenox Antitrust Litig.*,
    11 F. Supp. 3d 1342 (J.P.M.L. 2014)......................................................................5

*In re AT&T Inc. Customer Data Sec. Breach Litig.*,
    737 F. Supp. 3d 1350 (J.P.M.L. 2024)...................................................................13

*In re Bard Implanted Port Catheter Prod. Liab. Litig.*,
    MDL No. 3081, 2023 WL 5065100 (J.P.M.L. Aug. 8, 2023) ................................12

*In re: BRCA1- and BRCA2-Based Hereditary Cancer Test Patent Litig.*,
    999 F. Supp. 2d 1377 (J.P.M.L. 2014)...................................................................11

*In re Broiler Chicken Grower Antitrust Litig.*,
    509 F. Supp. 3d 1359 (J.P.M.L. 2020)...................................................................12

*In re Com. Explosives Antitrust Litig.*,
    MDL No. 1093 (J.P.M.L. filed 1995) .....................................................................11

*In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*,
    655 F. Supp. 3d 1380 (J.P.M.L. 2023).....................................................................8

*In re Digit. Advert. Antitrust Litig.*,
    555 F. Supp. 3d 1372 (J.P.M.L. 2021).....................................................................8

*In re Diversified Energy Corp. Secs. Litig.*,
   MDL No. 595 (J.P.M.L. filed 2015) ...................................................................11

*In re Dividend Solar Fin., LLC, & Fifth Third Bank Sales & Lending Pracs.*
   *Litig.*,
   753 F. Supp. 3d 1365 (J.P.M.L. 2024) .............................................................13

*In re: Enfamil Lipil Mktg. & Sales Pracs. Litig.*,
   764 F. Supp. 2d 1356 (J.P.M.L. 2011) ...............................................................7

*In re GoodRx & Pharmacy Benefit Mgr. Antitrust Litig. (No. II)*,
   776 F. Supp. 3d 1346 (J.P.M.L. 2025) .............................................................13

*In re: Halftone Color Separations ('809) Pat. Litig.*,
   547 F. Supp. 2d 1383 (J.P.M.L. 2008) .............................................................13

*In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*,
   658 F. Supp. 3d 1381 (J.P.M.L. 2023) ...............................................................9

*In re: Med. Waste Servs. Antitrust Litig.*,
   277 F. Supp. 2d 1382 (J.P.M.L. 2003) .............................................................11

*In re Nat'l Airlines, Inc. Maternity Leave Pracs. & Flight Attendant Weight*
   *Program Litig.*,
   399 F. Supp. 1405 (J.P.M.L. 1975) .....................................................................7

*In re OpenAI, Inc., Copyright Infringement Litig.*,
   776 F. Supp. 3d 1352 (J.P.M.L. 2025) ...............................................................7

*In re: Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*,
   122 F. Supp. 3d 1372 (J.P.M.L. 2015) ...............................................................5

*In re Plumbing Fixture Cases*,
   298 F. Supp. 484 (J.P.M.L. 1968) .......................................................................5

*In re Prudential Ins. Co. of Am. SGLI/VGLI Cont. Litig.*,
   763 F. Supp. 2d 1374 (J.P.M.L. 2011) .............................................................13

*In re Taasera Licensing, LLC, Patent Litig.*,
   619 F. Supp. 3d 1352 (J.P.M.L. 2022) ...............................................................7

*In re T-Mobile 2022 Customer Data Sec. Breach Litig.*,
   677 F. Supp. 3d 1366 (J.P.M.L. 2023) .............................................................11

*In re: The Church of Jesus Christ of Latter-Day Saints Tithing Litig.*,
   730 F. Supp. 3d 1357 (J.P.M.L. 2024) .............................................................11

*Janochoski v. Hoyt Archery, Inc.*,
    No. 0:25-cv-02788-LMP-ECW (D. Minn. July 7, 2025) ........................................................3

*Langley et al. v. Bowtech Inc. et al.*,
    No. 0:25-cv-03190-PJS-DJF (D. Minn. Aug. 8, 2025)...........................................................4

*Milby v. Hamskea Archery Solutions LLC et al.*,
    No. 1:25-cv-02507 (D. Colo. Aug. 12, 2025) ........................................................................4

*Montpetit v. Hoyt Archery, Inc.*,
    No. 3:25-cv-653-AMB (W.D. Wis. Aug. 5, 2025) .................................................................4

*Sabatini et al. v. Hoyt Archery, Inc.*,
    No. 1:25-cv-02355-RMR-SBP (D. Colo. July 30, 2025) ......................................................4

*Santarlas v. Hoyt Archery, Inc. et al.*,
    No. 2:25-cv-00436-DBB-DBP (D. Utah), ECF No. 1 .......................................................2, 3

*Simcik v. Archery Trade Ass'n*,
    No. 0:25-cv-02875-LMP-ECW (D. Minn. July 16, 2025) ....................................................3

*Swails v. Archery Trade Ass'n, Inc. et al.*,
    No. 0:25-cv-03146-LMP-ECW (D. Minn. Aug. 7, 2025) ......................................................4

*Vale v. Hoyt Archery, Inc.*,
    No. 0:25-cv-3110-LMP-ECW (D. Minn. Aug. 1, 2025) ........................................................4

## STATUTES

28 U.S.C.
    § 1404.................................................................................................................................1, 8
    § 1407............................................................................................................................5, 6, 14

## RULES

Fed. R. Civ. P. 12(b)(6)..............................................................................................................4

## OTHER AUTHORITIES

*2021 State-By-State Bowhunter Numbers*, Archery Trade Ass'n,
    https://archerytrade.org/wp-content/uploads/2023/03/2021-Bowhunter-Data-
    1.pdf (last visited Aug. 12, 2025) .........................................................................................10

*Airline Flight Information*, Salt Lake City Int'l Airport,
    https://slcairport.com/airlines-flights/ (last visited Aug. 12, 2025) .........................................9

Beehive-Wasatch Bowhunters, https://www.beehive-wasatchbowhunters.com/
    (last visited Aug. 12, 2025).....................................................................................................10

*Bowhunters United at Total Archery Challenge, Park City, Utah*, Archery Trade Ass'n, https://archerytrade.org/events/bowhunters-united-at-total-archery-challenge-park-city-utah/ (last visited Aug. 12, 2025) .........................................................10

Brigham Bowmen, https://brighambowmen.com/ (last visited Aug. 12, 2025) ...........................10

Datus Archery Club, https://datusarcheryclub.com/ (last visited Aug. 12, 2025) ........................10

*Delta News Hub*, Delta, https://news.delta.com/corporate-stats-and-facts (last visited Aug. 12, 2025)...............................................................................................9

Jud. Panel on Multidistrict Litig., MDL Statistics Report - Distribution of Pending MDL Dockets by District (Aug. 1, 2025) ...................................................................2, 11, 12

*Salt Lake City 2018 Hyundai Archery World Cup*, World Archery Fed'n, https://www.worldarchery.sport/competition/18117/salt-lake-city-2018-hyundai-archery-world-cup?photos_tag=DAY%201 (last visited Aug. 12, 2025) .........................................................................................................10

*State of the Art in Archery Training Centers Opens In Utah*, Easton Tec. Prods., Inc. (Apr. 2014), https://eastonarchery.com/2014/04/state-of-the-art-in-archery-training-centers-opens-in-utah/.................................................................10

Timpanogos Archers, https://timpanogosarchers.com/ (last visited Aug. 12, 2025)....................10

*USFWS Business Summit, Salt Lake City, Utah*, Archery Trade Ass'n, https://archerytrade.org/events/usfws-business-summit-salt-lake-city-utah/ (last visited Aug. 12, 2025).........................................................................................10

Utah Archery Ass'n, https://www.utaharchery.org/ (last visited Aug. 12, 2025) ........................10

*Hotel Package*, Visit Salt Lake, https://www.visitsaltlake.com/meetings/hotels/ (last visited Aug. 12, 2025).........................................................................................9

## I.    INTRODUCTION

Defendants Archery Trade Association, Inc., Hoyt Archery, Inc., Bowtech, LLC, BPS Direct, LLC d/b/a Bass Pro Shops, Cabela's LLC, Dick's Sporting Goods, Inc., Jay's Sports, Inc. d/b/a Jay's Sporting Goods, Lancaster Archery Supply, Inc., Mathews Archery, Inc., NeuIntel LLC d/b/a PriceSpider f/k/a ORIS Intelligence, and TrackStreet, Inc. (the "Responding Defendants")[1] collectively submit this response to Plaintiff Shawn Butter's Motion to Transfer Related Actions for Consolidated or Coordinated Pretrial Proceedings (ECF No. 1, "Butter Motion").

Responding Defendants agree that centralization of the 16 related actions is appropriate. Consolidation will promote the just and efficient resolution of the cases, avoid duplicative discovery and potentially inconsistent pretrial rulings, and preserve party and judicial resources. The 16 related actions are pending across eight districts in seven states and are assigned to 13 different judges.  Each plaintiff purports to represent an overlapping putative class and brings nearly identical claims challenging the same alleged conduct by the same group of defendants and alleged co-conspirators in the same purported relevant antitrust market.  In this context, informal coordination and/or transfer under Section 1404 is not a realistic alternative.

All Responding Defendants support transfer to the District of Utah, the location of the first-filed complaint.  The related actions involve parties dispersed relatively equally across the country, with plaintiffs seeking to represent putative nationwide classes, and the District of Utah provides a central, convenient location for all parties and witnesses.  Most importantly, given Responding Defendants' intention to challenge the adequacy of the allegations, the District of Utah is also the least congested forum in which a related case has been filed because there are no active

---

[1] Defendants Precision Shooting Equipment, Inc., Kinsey's Outdoors, Inc., and Roger's Sporting Goods Holdings, Inc. have not yet appeared in any of the filed actions that are subject to the Butter Motion, and the Responding Defendants have not had contact with any of them.

multidistrict litigations ("MDLs") in Utah.  In contrast, there are seven active MDLs in the District

of Minnesota, three in the Western District of Pennsylvania, and two in the Western District of

Missouri.  *See* United States Judicial Panel on Multidistrict Litig., MDL Statistics Report -

Distribution of Pending MDL Dockets by District (August 1, 2025).[2]  Further, Judge Barlow of

the District of Utah, to whom the first-filed complaint was assigned, is an experienced jurist with

recent experience overseeing complex class action antitrust claims.  He has the experience and

docket availability to efficiently manage these cases, and the related actions present an opportunity

for him to preside over an MDL for the first time.  Responding Defendants thus respectfully request

the Panel centralize the related actions and transfer them for pretrial purposes to the District of

Utah before Judge Barlow.

## II.    BACKGROUND

On May 30, 2025, Plaintiff Joseph Santarlas filed a proposed class action complaint in the

District of Utah alleging that the Archery Trade Association, Inc. ("ATA")—a non-profit, Virginia

nonstock corporation—facilitated a multi-year conspiracy among its thousands of members to fix

and/or stabilize the retail prices of all archery products via the implementation and enforcement of

minimum advertised price ("MAP") policies.  The *Santarlas* complaint names the ATA, four

upstream manufacturers,[3] six downstream retailers and distributors,[4] and two software companies[5]

as defendants and claims that the alleged conspiracy encompasses all "archery products," including

bows, arrows, arrowpoints, targets, and accessories. *Santarlas v. Hoyt Archery, Inc. et al.*, No.

---

[2] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-1-2025.pdf.

[3] Hoyt Archery, Bowtech, Mathews Archery, and Precision Shooting Equipment

[4] Cabela's, DICK'S Sporting Goods, Bass Pro Shops, Jay's Sporting Goods, Kinsey's Outdoors, and Lancaster Archery Supply

[5] TrackStreet and NeuIntel

2:25-cv-00436-DBB-DBP (D. Utah), ECF No. 1 ("Compl.").

One month later, a second proposed class action complaint was filed in the District of Minnesota, asserting substantially similar allegations against 11 of the same defendants (all but the software defendants). *Babst v. Archery Trade Ass'n Inc.*, No. 0:25-cv-02721 (D. Minn. June 27, 2025), ECF No. 1. Since then, fourteen additional proposed class action complaints have been filed across the country following the same pattern—accusing varying combinations of the same defendants of a decade-plus long conspiracy to artificially raise prices of archery products, based on their supposed implementation and enforcement of retail MAP policies:

- *Janochoski v. Hoyt Archery, Inc.*, No. 0:25-cv-02788-LMP-ECW (D. Minn. July 7, 2025) ("*Janochoski*") (naming all 13 *Santarlas* defendants);

- *Hansen v. Archery Trade Ass'n Inc.*, No. 3:25-cv-00779-AAT (M.D. Tenn. July 14, 2025) ("*Hansen*") (omitting the two software defendants);

- *Dunkin v. Bowtech, LLC*, No. 4:25-cv-00546-BP (W.D. Mo. July 15, 2025) ("*Dunkin*") (naming all 13 *Santarlas* defendants and adding retailer Rogers Sporting Goods Holdings, Inc.);

- *Simcik v. Archery Trade Ass'n*, No. 0:25-cv-02875-LMP-ECW (D. Minn. July 16, 2025) ("*Simcik*") (omitting the two software defendants);

- *Butter v. Archery Trade Ass'n, Inc. et al.*, No. 2:25-cv-01004-MJH (W.D. Pa. July 21, 2025) ("*Butter*") (naming all 13 *Santarlas* defendants);

- *Close v. Hoyt Archery, Inc.*, No. 2:25-cv-00617-JNP (D. Utah July 28, 2025) ("*Close*") (naming all 13 *Santarlas* defendants);

- *Hernandez Diaz et al. v. Bowtech, Inc.*, No. 2:25-cv-04277-CH (E.D. Pa. July 29, 2025) ("*Hernandez Diaz*") (naming all 13 *Santarlas* defendants);

- *Sabatini et al. v. Hoyt Archery, Inc.*, No. 1:25-cv-02355-RMR-SBP (D. Colo. July 30, 2025) ("*Sabatini*") (naming all 13 *Santarlas* defendants);

- *Vale v. Hoyt Archery, Inc.*, No. 0:25-cv-3110-LMP-ECW (D. Minn. Aug. 1, 2025) ("*Vale*") (naming all 13 *Santarlas* defendants);

- *Montpetit v. Hoyt Archery, Inc.*, No. 3:25-cv-653-AMB (W.D. Wis. Aug. 5, 2025) ("*Montpetit*") (naming all 13 *Santarlas* defendants);

- *Swails v. Archery Trade Ass'n, Inc. et al.*, No. 0:25-cv-03146-LMP-ECW (D. Minn. Aug. 7, 2025) ("*Swails*") (omitting the two software defendants);

- *Langley et al. v. Bowtech Inc. et al.*, No. 0:25-cv-03190-PJS-DJF (D. Minn. Aug. 8, 2025) ("*Langley*") (omitting the two software defendants);

- *Goodall, et al. v. Hamskea Archery Solutions LLC, et al.*, No. 1:25-cv-02506 (D. Colo. Aug. 12, 2025) ("*Goodall*") (naming all 13 *Santarlas* defendants and adding two additional manufacturers, Hamskea Archery Solutions LLC and Hunter's Manufacturing Company, Inc. d/b/a TenPoint Crossbow Technologies); and

- *Milby v. Hamskea Archery Solutions LLC et al.*, No. 1:25-cv-02507 (D. Colo. Aug. 12, 2025) ("*Milby*") (naming all 13 *Santarlas* defendants and manufacturer Hamskea).

These actions—the "Related Actions"—are pending in eight districts across seven states: Utah, Minnesota, Tennessee, Missouri, Pennsylvania, Colorado, and Wisconsin.

Only one case has progressed beyond the filing of a complaint: *Santarlas*, the first-filed action. On July 10, 2025, Defendant Mathews Archery, Inc. moved to dismiss the *Santarlas* complaint under Federal Rule of Civil Procedure 12(b)(6). *Santarlas*, ECF No. 31. The case was subsequently stayed for 60 days while the parties pursued coordination with this Panel. *Santarlas*, ECF Nos. 37, 44. Similar 60-day stays have been entered in *Babst*, *Janochoski*, and *Simcik* (*Babst*,

4

ECF No. 37; *Janochoski*, ECF No. 45; *Simcik*, ECF No. 42), and a 60-day extension of time to respond to the complaint has been requested in *Butter* (*Butter*, ECF No. 14). An initial case management conference is scheduled for September 29, 2025 in the *Hansen* matter. *Hansen*, ECF No. 5. No response date has been triggered in any of the other remaining actions.

## III.    LEGAL STANDARD

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). The purpose of Section 1407 is to "promote the just and efficient" resolution of related multidistrict actions and "eliminate the potential for conflicting contemporaneous pretrial rulings." *Id.*; *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). This is especially true "in the field of class action determinations," where "the potential for conflicting, disorderly, chaotic judicial action is the greatest." *In re Plumbing Fixture Cases*, 298 F. Supp. at 493. In that context, centralization avoids the "possible, and perhaps probable, pretrial chaos in conflicting class action determinations which Section 1407 was designed to make impossible." *Id.* at 492-93.

Once this Panel determines that centralization is appropriate, it then undertakes a multi-factor analysis to choose the proper transferee forum. Those factors include the convenience of the parties and witnesses, the location of evidence, and the experience and availability of the transferee judge and district in navigating the "nuances of complex and multidistrict litigation." *In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014); *In re: Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, 122 F. Supp. 3d 1372, 1374 (J.P.M.L. 2015) ("The district also presents a convenient and accessible forum with the necessary judicial resources and expertise to manage this litigation efficiently.").

5

## IV.    ARGUMENT

### A.    Centralization Is Appropriate Under Section 1407

Responding Defendants agree that centralization of the Related Actions is appropriate. With minor differences, the Related Actions are effectively the same case brought by different plaintiffs in different jurisdictions.  The Related Actions challenge the same conduct by the same group of defendants or alleged co-conspirators and allege the same relevant markets.  *Santarlas* Compl. ¶ 146; *Babst* Compl. ¶¶ 34, 146; *Janochoski* Compl. ¶ 146; *Hansen* Compl. ¶¶ 31-32; *Dunkin* Compl. ¶ 147; *Simcik* Compl. ¶¶ 33-34; *Butter* Compl. ¶ 48; *Close* Compl. ¶ 117; *Hernandez Diaz* Compl. ¶ 140; *Sabatini* Compl. ¶ 147; *Vale* Compl. ¶ 31; *Montpetit* Compl. ¶¶ 115-16; *Swails* Compl. ¶ 142; *Langley* Compl. ¶ 145-46; *Goodall* Compl. ¶¶ 60, 149; *Milby* Compl. ¶ 118. Plaintiffs across 13 of the 16 Related Actions purport to represent the same nationwide class of "[a]ll persons and entities … that directly purchased Archery Products … manufactured or distributed by an [ATA] member, at any point between January 1, 2014 and the present." *Santarlas*, Compl. ¶ 50; *see also Babst* Compl. ¶ 160; *Janochoski* Compl. ¶ 50; *Hansen* Compl. ¶ 144; *Dunkin* Compl. ¶ 165; *Simcik* Compl. ¶ 161; *Butter* Compl. ¶ 160; *Close* Compl. ¶ 121; *Hernandez Diaz* Compl. ¶ 132; *Sabatini* Compl. ¶ 51; *Vale* Compl. ¶ 107; *Langley* Compl. ¶ 160; *Goodall* Compl. ¶ 53; *Milby* Compl. ¶ 122. In the remaining three actions, plaintiffs seek to represent an overlapping class of direct and indirect purchasers (*Butter* Compl. ¶ 160; *Swails* Compl. ¶ 160) or solely indirect purchasers (*Montpetit* Compl. ¶ 132) over the same period. Moreover, all plaintiffs assert the same antitrust claim under the federal antitrust laws and seek the same relief of damages and/or overlapping injunctive relief.[6]

---

[6] The *Montpetit* action additionally asserts state law claims. *Montpetit* Compl., Counts II and III. The *Babst*, *Hansen*, *Simcik*, *Butter*, and *Langley* actions additionally plead a second claim for violation of the federal Sherman Act based on the exchange of competitively sensitive information.

Absent centralization, the parties will have to litigate and conduct discovery into, and the presiding courts will have to decide, many of the same questions, the first being whether the claims can survive a motion to dismiss.  If they can, presiding courts will have to decide (1) the scope of discovery; (2) whether to certify any proposed class; (3) the existence of any arbitration agreements and the effect thereof; and (4) summary judgment.

Given the overwhelming common questions of fact and law, centralization of the Related Actions will prevent inconsistent pretrial rulings, eliminate duplicative discovery, and conserve party and judicial resources. *See, e.g.*, *In re OpenAI, Inc., Copyright Infringement Litig.*, 776 F. Supp. 3d 1352, 1354 (J.P.M.L. 2025) (Where "each action will involve overlapping, complex, and voluminous discovery … [c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly as to class certification; and conserve the resources of the parties, their counsel, and the judiciary."); *In re Taasera Licensing, LLC, Patent Litig.*, 619 F. Supp. 3d 1352, 1353 (J.P.M.L. 2022) ("There are significant efficiencies to be gained, for both the parties and the judicial system, by having only one court oversee discovery ….").

Consolidation of the Related Actions will also lead to several efficiencies, particularly where plaintiffs seek to represent overlapping putative classes. *See In re OpenAI*, 776 F. Supp. 3d at 1354 (where cases presented "overlapping … class certification motions[,] [c]entralization will allow a single judge to coordinate discovery, streamline pretrial proceedings, and eliminate inconsistent rulings"); *see also In re: Enfamil Lipil Mktg. & Sales Pracs. Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) (finding that centralizing "nationwide class allegations[] to a single judge [] can ensure that pretrial proceedings are conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of all parties and the courts") (citation omitted); *In re Nat'l Airlines, Inc. Maternity Leave Pracs. & Flight Attendant Weight*

*Program Litig.*, 399 F. Supp. 1405, 1407 (J.P.M.L. 1975) ("[T]he need to eliminate the possibility of overlapping class determinations presents another compelling reason to bring these actions together for pretrial in a single jurisdiction." (citations omitted)). Centralization allows these cases to proceed through pretrial under a single judge, rather than 13 judges across eight districts.

Moreover, "[i]nformal coordination is not a practicable and efficient alternative to centralization" in this context. *In re Digit. Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1377 (J.P.M.L. 2021). The Related Actions are pending in eight districts and involve 15 distinct groups of plaintiffs' counsel and (at least) 13 distinct groups of defendants' counsel.[7] No plaintiff has moved for transfer under Section 1404, and thus far, all parties support coordination by this Panel. Further, additional tag-along actions continue to be filed, which further demonstrates the need for centralization. In these circumstances, particularly in the context of overlapping putative antitrust class actions, Section 1404 transfer "is not an efficient alternative." *In re Digit. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1377; *In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*, 655 F. Supp. 3d 1380, 1382 (J.P.M.L. 2023) (potential for additional tag-along actions and uncertainty as to any future Section 1404 transfer motions tips the balance in favor of centralization).

## B.    The District of Utah Is the Proper District for Centralization

All Responding Defendants agree that the District of Utah is the proper district for centralization.  The District of Utah is centrally located and convenient for all parties, has the least congested MDL docket, and is the forum of the first-filed complaint, which has been assigned to a district judge with the availability and experience to handle this antitrust MDL.

---

[7] The *Santarlas* and *Goodall* plaintiffs are represented by the same counsel, despite filing complaints on behalf of the same putative class against overlapping defendants in different district courts within the same Circuit.  The same is true for the *Close* and *Milby* plaintiffs.  Defendants Precision Shooting, Kinsey's Outdoors, Roger's Sporting Goods, Hamskea Archery Solutions, and TenPoint Crossbow Technologies have not appeared in any action, and Responding Defendants are unaware of the identity of their counsel.

### 1.     The District of Utah Is Convenient for All Parties

The various Related Actions name between 11 and 15 defendants that are geographically dispersed and headquartered across the country.  The District of Utah provides a relatively central location, with a major airport, which is accessible and convenient to all parties.

The Utah District Court is located in Salt Lake City, Utah, less than 15 minutes from the Salt Lake City International Airport, a Delta hub airport served by all major airlines. *See Delta News Hub*, Delta, https://news.delta.com/corporate-stats-and-facts (last visited Aug. 12, 2025); *Airline Flight Information*, Salt Lake City Int'l Airport, https://slcairport.com/airlines-flights/ (last visited Aug. 12, 2025).  The court is also less than one mile from the Salt Lake City Intermodal Hub and Amtrak station, with convenient bus and train transportation from all major cities across the country.  Within the city limits, there are over 20,000 hotel rooms, including 8,000 within walking distance of the federal courthouse.  *See Hotel Package*, Visit Salt Lake, https://www.visitsaltlake.com/meetings/hotels/ (last visited Aug. 12, 2025).

The District of Utah also has a connection to the parties and claims in the Related Actions. One of the manufacturer defendants—Hoyt Archery—is headquartered in Salt Lake City, where it has been located for more than 40 years.  *See In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*, 658 F. Supp. 3d 1381, 1382 (J.P.M.L. 2023) (ordering transfer to district in which defendant's headquarters was located).  Five other defendants—Bass Pro Shops, Cabela's, DICK'S Sporting Goods, Bowtech, and Mathews Archery—have retail locations and dealers in Utah, including "mega" retail centers in Lehi and Farmington.  Further, at least one complaint also alleges that a meeting of the ATA's Board of Directors took place in Utah.  *See, e.g.*, *Santarlas* Compl. ¶ 104.

These factors render the District of Utah more convenient and central to the dispute than the Districts requested by Plaintiffs Dunkin and Babst.  The Western District of Pennsylvania is

located near the East Coast and not convenient for several of the defendant parties, including TrackStreet and NeuIntel, which are relatively small software companies located in Las Vegas, Nevada and Irvine, California, respectively. Similarly, the *Babst* plaintiff misplaces reliance on the fact that the ATA is headquartered in Minnesota (JPML ECF No. 40 at 5-6). ATA's members (which number in the thousands), its board of directors, and its executives are located across the country. Discovery will not center on Minnesota but rather will spread across venues throughout the country. The District of Minnesota courthouse also is not located near the ATA headquarters; it is approximately 100 miles away. And only one defendant is headquartered in Colorado, Hamskea Archery Solutions, a manufacturer named in only two of the 16 Related Actions.

Utah is also home to over 13,000 licensed bow hunters[8] and numerous archery clubs,[9] and is the location of various archery challenges, national tournaments, and summits.[10] Salt Lake City has also hosted the international Archery World Cup competition five times in the last fifteen years, and recently completed one of the country's largest, state-of-the-art training centers.[11] In

---

[8] *2021 State-By-State Bowhunter Numbers*, Archery Trade Ass'n, https://archerytrade.org/wp-content/uploads/2023/03/2021-Bowhunter-Data-1.pdf (last visited Aug. 12, 2025).

[9] *E.g.*, Utah Archery Ass'n, https://www.utaharchery.org/ (last visited Aug. 12, 2025); Datus Archery Club, https://datusarcheryclub.com/ (last visited Aug. 12, 2025); Beehive-Wasatch Bowhunters, https://www.beehive-wasatchbowhunters.com/ (last visited Aug. 12, 2025); Brigham Bowmen, https://brighambowmen.com/ (last visited Aug. 12, 2025); Timpanogos Archers, https://timpanogosarchers.com/ (last visited Aug. 12, 2025).

[10] *E.g.*, *Bowhunters United at Total Archery Challenge, Park City, Utah*, Archery Trade Ass'n, https://archerytrade.org/events/bowhunters-united-at-total-archery-challenge-park-city-utah/ (last visited Aug. 12, 2025); *USFWS Business Summit, Salt Lake City, Utah*, Archery Trade Ass'n, https://archerytrade.org/events/usfws-business-summit-salt-lake-city-utah/ (last visited Aug. 12, 2025).

[11] *See Salt Lake City 2018 Hyundai Archery World Cup*, World Archery Fed'n, https://www.worldarchery.sport/competition/18117/salt-lake-city-2018-hyundai-archery-world-cup?photos_tag=DAY%201 (last visited Aug. 12, 2025); *see also State of the Art in Archery Training Centers Opens In Utah*, Easton Tec. Prods., Inc. (Apr. 2014), https://eastonarchery.com/2014/04/state-of-the-art-in-archery-training-centers-opens-in-utah/.

short, the District of Utah is shared by six of the defendants, has a connection to the allegations in the underlying complaints, and is geographically central for the parties. *See In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 677 F. Supp. 3d 1366, 1367 (J.P.M.L. 2023) (transferring to district that "provides a central and easily accessible location for this nationwide litigation").

### 2.    The District of Utah Is Less Congested than Alternative Forums

The District of Utah is also a more appropriate forum with greater availability to manage the litigation. This Panel has repeatedly recognized the District of Utah as an appropriate transferee forum for multidistrict litigation, including in at least two prior antitrust litigations. *See In re: The Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, 730 F. Supp. 3d 1357 (J.P.M.L. 2024); *In re: BRCA1- and BRCA2-Based Hereditary Cancer Test Patent Litig.*, 999 F. Supp. 2d 1377 (J.P.M.L. 2014); *In re: Med. Waste Servs. Antitrust Litig.*, 277 F. Supp. 2d 1382 (J.P.M.L. 2003); *In re Com. Explosives Antitrust Litig.*, MDL No. 1093 (J.P.M.L. filed 1995); *In re Diversified Energy Corp. Secs. Litig.*, MDL No. 595 (J.P.M.L. filed 2015). All of those actions have now closed, and there are no currently pending MDLs in the District of Utah—meaning it is experienced and available.

The MDL dockets in other proposed Districts are far more congested. There are already seven pending MDLs in the District of Minnesota, three in the Western District of Pennsylvania, two in the Western District of Missouri, and one recently assigned to the Middle District of Tennessee. *See* Jud. Panel on Multidistrict Litig., MDL Statistics Report – Distribution of Pending MDL Dockets by District (July 1, 2025).[12] Minnesota is particularly congested, with six of the pending MDLs each coordinating more than 30 individual actions, and the seventh MDL joining over 8,000 cases. *Id.*

---

[12] *See* note 2.

The fact that multiple Related Actions have been filed in Minnesota, each several weeks after the first-filed *Santarlas* case in the District of Utah, does not make the District of Minnesota a better forum to manage this litigation. It makes little sense to send an *eighth* MDL to the District of Minnesota, when there are also multiple Related Actions filed in the District of Utah, a District that does not currently have any active MDLs. Similarly, the Third Circuit—in which the Western District of Pennsylvania sits, and where Plaintiff Butter asks the Panel to transfer these Related Actions—is one of the *most* congested circuits for MDL litigation in the country, in stark contrast with the Tenth Circuit:

| Number of Pending MDLs Per Circuit | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st | 2d | 3d | 4th | 5th | 6th | 7th | 8th | 9th | 10th | 11th | DC |
| 7 | 17 | 28 | 9 | 7 | 12 | 15 | 11 | 28 | 4 | 16 | 2 |

*See* Jud. Panel on Multidistrict Litig., MDL Statistics Report - Distribution of Pending MDL Dockets by District (Aug. 1, 2025).[13]

### 3.    The District of Utah Is Home to the First-Filed Action

Two Related Actions are pending in the District of Utah, including the first-filed *Santarlas* action. This fact also supports transfer there. *See In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020) (transferring to the forum with "the first-filed action and the most procedurally advanced—it is the only action that has progressed beyond the pleadings stage"); *In re Bard Implanted Port Catheter Prod. Liab. Litig.*, MDL No. 3081, 2023 WL 5065100, at *2 (J.P.M.L. Aug. 8, 2023) (transferring to venue "where a constituent action is pending—as the transferee district for this nationwide litigation"). Further, defendant Mathews Archery already filed a motion to dismiss in the *Santarlas* case before that Court entered a stay pending this Panel's resolution of the centralization motion. Although the Mathews' motion is likely to be mooted by

---

[13] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-1-2025.pdf (data as of August 1, 2025).

the filing of a consolidated amended complaint, the sequencing of events makes it "appropriate to give 'the first-filed criterion some weight in selecting a transferee district.'" *In re Prudential Ins. Co. of Am. SGLI/VGLI Cont. Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (citing *In re: Halftone Color Separations ('809) Pat. Litig.*, 547 F. Supp. 2d 1383, 1384 (J.P.M.L. 2008)).

### 4.    Judge Barlow Is Experienced and Well-Suited to Manage this Action

Finally, assignment of these actions to Judge Barlow in the District of Utah is warranted for several reasons.  First, Judge Barlow is an experienced judge who has not yet supervised an MDL action and is currently assigned to the first-filed *Santarlas* action.  As this Panel has recognized, providing experienced judges with an opportunity to preside over an MDL action is a relevant consideration for transfer.  *See, e.g.*, *In re GoodRx & Pharmacy Benefit Mgr. Antitrust Litig. (No. II)*, 776 F. Supp. 3d 1346, 1348 (J.P.M.L. 2025) ("We assign the litigation to Judge Mary S. McElroy, a capable jurist who presides over all four cases in the District of Rhode Island and has not yet had the opportunity to preside over an MDL."); *In re Dividend Solar Fin., LLC, & Fifth Third Bank Sales & Lending Pracs. Litig.*, 753 F. Supp. 3d 1365, 1367 (J.P.M.L. 2024) ("Judge Menendez, to whom we assign the litigation, is a skilled jurist who has not yet had the opportunity to preside over an MDL."); *In re AT&T Inc. Customer Data Sec. Breach Litig.*, 737 F. Supp. 3d 1350, 1352 (J.P.M.L. 2024) ("We assign this litigation to the Honorable Ada E. Brown, a skilled jurist with the willingness and ability to manage this litigation, who has not yet had the opportunity to preside over an MDL.").

Second, Judge Barlow has relevant antitrust and class action experience and appears to have availability to efficiently manage these actions.  In addition, Judge Barlow has only 198 active cases (fewer than the average per judgeship in that District), further supporting his capacity to efficiently preside over these matters.  *See* Lex Machina Judge Profile, Judge David Barlow, U.S. District Court for the District of Utah, Aug. 13, 2025 (accessed via LexisNexis).  Accordingly,

although all the judges assigned to the various Related Actions are certainly capable, these complex antitrust cases appear particularly well-suited for Judge Barlow.

## V.    CONCLUSION

For the foregoing reasons, Responding Defendants request that the Court transfer the Related Actions to the United States District Court for the District of Utah, to be centralized with *Santarlas* before Judge Barlow, pursuant to 28 U.S.C. § 1407.

DATED:  August 13, 2025                              Respectfully submitted,

| | |
|---|---|
| /s/ *Anna Rathbun*<br>Anna Rathbun<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW<br>Suite 1000<br>Washington, D.C. 20004-1304<br>Phone: (202) 637-2200<br>Fax: (202) 637-2201<br>Anna.Rathbun@lw.com<br><br>*Counsel for Defendants BPS Direct,*<br>*LLC and Cabela's LLC* | /s/ *Bentley J. Tolk* (*with permission*)<br>Terry E. Welch<br>Bentley J. Tolk<br>Sean M. Sigillito<br>PARR BROWN GEE & LOVELESS, P.C.<br>101 South 200 East, Suite 700<br>Salt Lake City, Utah 84111<br>Phone: (801) 532-7840<br>Fax: (801) 532-7750<br>twelch@parrbrown.com<br>btolk@parrbrown.com<br>ssigillito@parrbrown.com<br><br>*Counsel for Defendant Archery Trade*<br>*Association, Inc.* |
| /s/ *Kamron T.M. Hasan* (*with permission*)<br><br>Thomas P. Heneghan<br>Wendy Arends<br>HUSCH BLACKWELL LLP<br>33 East Main Street, Suite 300<br>Madison, WI 53703<br>Phone: (608) 258-7382<br>Fax: (608) 258-7138<br>tom.heneghan@huschblackwell.com<br>wendy.arends@huschblackwell.com<br><br><br>Kamron T.M. Hasan<br>HUSCH BLACKWELL LLP<br>14606 Branch Street, Suite 200<br>Omaha, NE 68154<br>Phone: (402) 964-5000<br>Fax: (402) 964-5050<br>kamron.hasan@huschblackwell.com<br><br>*Counsel for Defendant Bowtech, LLC* | /s/ *Christa C. Cottrell* (*with permission*)<br>Daniel E. Laytin<br>Christa C. Cottrell<br>Brendan E. Ryan<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>Phone: (312) 862-2000<br>tasha.gerasimow@kirkland.com<br>dlaytin@kirkland.com<br>ccottrell@kirkland.com<br>brendan.ryan@kirkland.com<br><br>*Counsel for Defendant Dick's Sporting*<br>*Goods, Inc.* |

| | |
|---|---|
| /s/ *F. Matthew Ralph* (*with permission*)<br>Michael A. Lindsay<br>F. Matthew Ralph<br>DORSEY & WHITNEY LLP<br>50 South Sixth Street Suite 1500<br>Minneapolis, MN 55402-1498rogers<br>Phone: (612) 340-2600<br>Fax: (952) 516-5637<br>lindsay.michael@dorsey.com<br>ralph.matthew@dorsey.com<br><br>Brett Foster<br>DORSEY & WHITNEY LLP<br>111 South Main Street, Suite 2100<br>Salt Lake City, UT 84111-2176<br>Phone: (801) 933-7360<br>foster.brett@dorsey.com<br><br>*Counsel for Defendant Hoyt Archery, Inc.* | /s/ *Jeremy J. Stewart* (*with permission*)<br>Jeremy J. Stewart<br>SNELL & WILMER LLP<br>15 West South Temple, Suite 1200<br>Salt Lake City, UT  84101<br>Phone: 801-257-1865<br>jjstewart@swlaw.com<br><br>*Counsel for Defendant Jay's Sports, Inc. d/b/a Jay's Sporting Goods* |
| /s/ *Bill Katz* (*with permission*)<br>Bill Katz<br>GREENBERG TRAURIG, LLP<br>2200 Ross Avenue, Suite 5200<br>Dallas, Texas 75201<br>Phone: (214) 665-3600<br>Bill.Katz@gtlaw.com<br><br>*Counsel for Defendant Lancaster Archery Supply, Inc.* | /s/ *Erik T. Koons* (*with permission*)<br>Erik T. Koons<br>Thomas E. Carter<br>Frances Jennings<br>BAKER BOTTS L.L.P.<br>700 K Street, N.W.<br>Washington, D.C. 20001<br>Phone: (202) 639-7700<br>Fax: (202) 639-7890<br>erik.koons@bakerbotts.com<br>tom.carter@bakerbotts.com<br>fran.jennings@bakerbotts.com<br><br>*Counsel for Defendant Mathews Archery, Inc.* |

| | |
|---|---|
| /s/ *Derek A. Sutton* (*with permission*)<br>Morgan T. Nickerson<br>K&L Gates LLP<br>1 Congress Street<br>Suite 2900<br>Boston, Massachusetts 02114<br>Phone: (617) 261-3134<br>morgan.nickerson@klgates.com<br><br>Derek A. Sutton<br>K&L Gates LLP<br>301 Hillsborough Street, Suite 1200<br>Raleigh, North Carolina 27603<br>Phone: (919) 743-7331<br>derek.sutton@klgates.com<br><br>*Counsel for Defendants Neuintel LLC d/b/a*<br>*Pricespider Holdings LLC, f/k/a ORIS*<br>*Intelligence and TrackStreet, Inc.* | |