**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: ARCHERY PRODUCTS ANTITRUST LITIGATION | MDL No. 3160 |

### REPLY IN SUPPORT OF SHAWN BUTTER'S MOTION FOR TRANSFER AND CENTRALIZATION OF THE RELATED ACTIONS IN THE DISTRICT OF COLORADO

Pursuant to 28 U.S.C. § 1407 and Panel Rule 6.1(d), Plaintiff Shawn Butter[1] ("Movant") respectfully submits this reply in support of his Motion to Transfer and Centralize the Movant's Action and the Related Actions[2] for Consolidated or Coordinated Pretrial Proceedings ("Reply"). Following a review of filings in this matter from various plaintiffs and defendants, and after conferring with counsel for other plaintiffs, Movant asserts that the seventeen Related Actions, and any future Related Actions, should be transferred and centralized in the District of Colorado instead of the Western District of Pennsylvania (Movant's original position).

---

[1] *Butter v. Archery Trade Ass'n, Inc. et al.*, No. 2:25-cv-1004-MJH (W.D. Pa. 2025).

[2] For purposes of this reply, Movant defines all seventeen actions filed to this point, including his own, as the "Related Actions." The Related Actions are: *Santarlas v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-436-DBB-DBP (D. Utah 2025); *Babst v. Archery Trade Ass'n, Inc. et al.*, No. 0:25-cv-2721-LMP-ECW (D. Minn. 2025); *Janochoski v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-2788-LMP-ECW (D. Minn. 2025); *Hansen v. Archery Trade Ass'n, Inc. et al.*, No. 3:25-cv-779 (M.D. Tenn. 2025); *Dunkin v. Bowtech, LLC et al.*, No. 4:25-cv-546-BP (W.D. Mo. 2025); *Simcik v. Archery Trade Ass'n, Inc. et al.*, No. 0:25-cv-2875-LMP-ECW (D. Minn. 2025); *Close v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-617-JNP (D. Utah 2025); *Hernandez Diaz et al. v. Bowtech Inc. et al.*, No. 5:25-cv-4277-CH (E.D. Pa. 2025); *Sabatini et al. v. Hoyt Archery, Inc. et al.*, No. 1:25-cv-2355-RMR-SBP (D. Colo. 2025); *Vale v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-3110-LMP-ECW (D. Minn. 2025); *Montpetit v. Hoyt Archery Inc. et al.*, No. 3:25-cv-653-amb (W.D. Wis. 2025); *Swails v. Archery Trade Ass'n, Inc. et al.*, No. 0:25-cv-3146-LMP-ECW (D. Minn. 2025); *Langley et al. v. BowTech Inc. et al.*, No. 0:25-cv-3190-LMP-ECW (D. Minn. 2025); *Goodall et al. v. Hamskea Archery Sols. LLC et al.*, No. 1:25-cv-2506-TPO (D. Colo. 2025); *Milby v. Hamskea Archery Sols. LLC et al.*, No. 1:25-cv-2507-SHP (D. Colo. 2025); *Carrolo v. Bowtech, LLC et al.*, 4:25-cv-631-SRB (W.D. Mo. 2025); and *Butter v. Archery Trade Ass'n, Inc. et al.*, No. 2:25-cv-1004-MJH (W.D. Pa. 2025).

## ARGUMENT

To date, seventeen Related Actions have been filed alleging that defendants engaged in a conspiracy to fix, raise, or stabilize the price of archery products in the United States.[3] No party disputes that centralization would further "the convenience of parties and witnesses and [] promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The parties responding to Movant's initial motion only disagree as to the appropriate transferee district.

As of the date of this Reply, the clear consensus is the District of Colorado. The number of parties in support of transfer to the various district courts at issue is as follows:

- **District of Colorado**: Plaintiffs in six Related Actions support transfer to the District of Colorado. ECF Nos. 66, 67.[4] Plaintiff in one Related Action supports, in the alternative, the District of Colorado. ECF No. 65.[5]

---

[3] Movant notes that, in his initial Memorandum, he inadvertently omitted one defendant named in a Related Action. *See* ECF No. 1-1 at 3. Rogers Sporting Goods Holdings, Inc. is a named defendant in *Dunkin v. Bowtech, LLC et al.*, No. 4:25-cv-546-BP (W.D. Mo. 2025).

[4] In addition to (1) Movant, plaintiffs in the following Related Actions support transfer to the District of Colorado: (2) *Santarlas v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-436-DBB-DBP (D. Utah 2025); (3) *Close v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-617-JNP (D. Utah 2025); (4) *Sabatini et al. v. Hoyt Archery, Inc. et al.*, No. 1:25-cv-2355-RMR-SBP (D. Colo. 2025); (5) *Goodall et al. v. Hamskea Archery Sols. LLC et al.*, No. 1:25-cv-2506-TPO (D. Colo. 2025); and (6) *Milby v. Hamskea Archery Sols. LLC et al.*, No. 1:25-cv-2507-SHP (D. Colo. 2025).

[5] Plaintiff in the following Related Action supports, in the alternative, transfer to the District of Colorado: *Janochoski v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-2788-LMP-ECW (D. Minn. 2025).

- **District of Minnesota**: Plaintiffs in four Related Actions support transfer to the District of Minnesota. ECF Nos. 40, 59, 64, 65.[6] Plaintiffs in two Related Actions support, in the alternative, the District of Minnesota. ECF Nos. 61, 70.[7]

- **Western District of Missouri:** Plaintiffs in three Related Actions support transfer to the Western District of Missouri. ECF Nos. 22, 61, 85.[8]

- **Middle District of Tennessee:** Plaintiff in one Related Action supports transfer to the Middle District of Tennessee. ECF No. 70.[9]

- **District of Utah**: Various defendants support transfer to the District of Utah. ECF No. 72. Plaintiffs in four Related Actions support, in the alternative, the District of Utah. ECF Nos. 66, 67.[10]

Upon meeting and conferring with counsel for other plaintiffs, Movant believes that transfer is most appropriate to the district where "most plaintiffs appear[] to have coalesced." *In*

---

[6] Plaintiffs in the following Related Actions support transfer to the District of Minnesota: (1) *Babst v. Archery Trade Ass'n, Inc. et al.*, No. 2:25-cv-2721-LMP-ECW (D. Minn. 2025); (2) *Janochoski v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-2788-LMP-ECW (D. Minn. 2025); (3) *Simcik v. Archery Trade Ass'n., Inc. et al.*, No. 0:25-cv-2875-LMP-ECW (D. Minn. 2025); and (4) *Hernandez Diaz et al. v. Bowtech, Inc. et al.*, No. 5:25-cv-4277-CH (E.D. Pa. 2025).

[7] Plaintiffs in the following Related Actions support, in the alternative, transfer to the District of Minnesota: (1) *Hansen v. Archery Trade Ass'n Inc. et al.*, No. 3:25-cv-779 (M.D. Tenn. 2025); and (2) *Montpetit v. Hoyt Archery, Inc. et al.*, No. 3:25-cv-653-amb (W.D. Wis. 2025).

[8] Plaintiffs in the following Related Actions support transfer to the Western District of Missouri: (1) *Dunkin v. Bowtech, LLC et al.*, No. 4:25-cv-546-BP (W.D. Mo. 2025); (2) *Montpetit v. Hoyt Archery Inc. et al.*, No. 3:25-cv-653-amb (W.D. Wis. 2025); and (3) *Carollo v. Bowtech, LLC et al.*, No. 4:25-cv-631-SRB (W.D. Mo. 2025).

[9] Plaintiff in the following Related Action supports transfer to the Middle District of Tennessee: *Hansen v. Archery Trade Ass'n Inc. et al.*, No. 3:25-cv-779 (M.D. Tenn. 2025).

[10] Plaintiffs in the following Related Actions support, in the alternative, transfer to the District of Utah: (1) *Santarlas v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-436-DBB-DBP (D. Utah 2025); (2) *Close v. Hoyt Archery, Inc. et al.*, No. 2:25-cv-617-JNP (D. Utah 2025); (3) *Goodall et al. v. Hamskea Archery Sols. LLC et al.*, No. 1:25-cv-2506-TPO (D. Colo. 2025); and (4) *Milby v. Hamskea Archery Sols. LLC et al.*, No. 1:25-cv-2507-SHP (D. Colo. 2025).

*re: Zantac (Ranitidine) Prod. Liab. Litig.*, 437 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020). As shown above, that District is the District of Colorado—a venue favored by plaintiffs in six of the sixteen Related Actions other than Movant's (five in the first instance and one in the alternative). Movant therefore adopts the arguments for centralization and transfer to the District of Colorado made by plaintiffs Joseph Santarlas, Tanya and Justen Goodall, Shane Close, and Casey Milby. *See* ECF Nos. 66, 67. Movant opposes the arguments advanced by plaintiffs Gary Dunkin, Brock Montpetit, and Anthony Carollo for the Western District of Missouri, Erick Babst and Alex Janochoski for the District of Minnesota, and Hugh Hansen for the Middle District of Tennessee. *See* ECF Nos. 22, 40, 61, 65, 70, 85. The District of Colorado is the ideal venue to manage this litigation.

### A. The Panel Should Transfer the Related Actions to the District of Colorado

In determining the appropriate transferee district, the Panel considers a variety of factors, including, though not limited to: (1) whether the District is "convenient and accessible" for all parties; (2) the location of "relevant documents and witnesses"; (3) the parties' preferences; and (4) the relative experience of the transferee judge and district in navigating the nuances of multidistrict litigation. *In re Concrete & Cement Additives Antitrust Litig.*, 730 F. Supp. 3d 1381, 1382 (J.P.M.L. 2024). Each of these factors supports transfer to the District of Colorado.

  i.  *The District of Colorado is the most convenient and accessible for all parties.*

The District of Colorado is located in the most accessible transferee forum of the five with support from any Party—Denver (District of Colorado), Minneapolis (District of Minnesota), Nashville (Middle District of Tennessee), Kansas City (Western District of Missouri), and Salt Lake City (District of Utah). Denver International Airport ("DIA") offers, by

far, the most flights of the airports in the proposed transferee districts, with some 999 passenger flights scheduled to take off every day:[11]



DIA is located near the Byron White United States Courthouse—just nineteen miles away.[12] Taxis, rental cars, and mass transportation options are easily available to provide transit between the airport and Courthouse. This ease of travel is particularly important in this matter, where potential class members, defendants, and witnesses are spread across all fifty states and U.S. territories. In addition, several defendants in the Related Actions are located in Western states, including Colorado, Utah, Oregon, Nevada, Arizona, and California. For these defendants, Denver is a closer location than locations such as Minneapolis or Nashville. The District of Colorado therefore provides a "relatively central forum for this nationwide litigation." *In re: Gadolinium Contrast Dyes Prod. Liab. Litig.*, 536 F. Supp. 2d 1380, 1382 (J.P.M.L. 2008); *see In*

---

[11] *See* DIRECTFLIGHTS.COM, https://www.directflights.com/direct-flight-routes-us-airports (last accessed August 18, 2025).

[12] *See* GOOGLE MAPS, https://maps.app.goo.gl/kEHbR8NBgZywnrT39 (last accessed August 14, 2025).

*re: Samsung Top-Load Washing Mach. Mktg., Sales Pracs. and Prod. Liab. Litig.*, 278 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) (transferring to district which was "centrally located relative to the geographically dispersed domestic defendants"). Given the District of Colorado's accessible travel options and relatively central location, this venue is more "convenient" to all parties than Minneapolis, Kansas City, Nashville, or Salt Lake City. *See* ECF No. 22 at 10-11; ECF No. 40 at 7-8, ECF No. 65 at 7-8; ECF No. 70 at 3-4.

    ii.  *Relevant witnesses and evidence will be found in the District of Colorado*.

Unlike the District of Minnesota, the District of Colorado contains substantial amounts of relevant evidence and witnesses. The District is home to Hamskea Archery Solutions LLC—a named defendant in two Related Actions—which manufactures archery products and operates thirty dealers across the State. Colorado is also the home of USA Archery, the national governing body for Olympic, Paralympic, and World Championship archery competitors.[13] Defendant Archery Trade Association ("ATA") is a "contributing partner" to USA Archery. USA Archery hosts a number of archery events in Colorado with the ATA's support, and has partnered with USA Archery for exclusive events at ATA trade shows.[14] In addition, the "Colorado Archery in the Schools Program" incorporates archery into school curriculums, and has helped some 20,000 students across 200 schools gain experience with bowsports.[15] Finally, Colorado is a prime destination for elk bowhunting. Craig, Colorado, which is in this District, is described as the "Elk

---

[13] *See About Us*, USA ARCHERY, https://www.usarchery.org/about/about-us (last accessed August 14, 2025).
[14] *See USA Archery Sponsors*, USA ARCHERY, https://www.usarchery.org/about/sponsors (last accessed Aug. 15, 2025); *USA Archery Opens Registration for Its Newest Event,* USA ARCHERY (Aug. 16, 2021) https://www.usarchery.org/article/usa-archery-opens-registration-for-its-newest-event---the-2022-usa-archery-25-meter-shootout (last accessed August 15, 2025).
[15] *Bring Archery to Your School,* COLO. PARKS & WILDLIFE, https://cpw.state.co.us/archery-schools (last accessed August 17, 2025).

Hunting Capital of the World."[16] In 2018 alone, some 48,000 Colorado bowhunters harvested 5,500 elk.[17] The Colorado Bowhunters Association lobbies on behalf of these bowhunters, hosting events across the state year-round.[18] The presence in Colorado of a named defendant in several actions, professional organizations with relevance to this litigation, and an active bowhunting culture mean that a sizable amount of relevant evidence will be present in this District.

Plaintiffs Babst and Janochoski argue that Minnesota is a preferable jurisdiction because the ATA is headquartered in New Ulm, Minnesota. ECF No. 40 at 5; ECF No. 65 at 6. As defendants, including the ATA itself, correctly noted in their response, these plaintiffs "misplace[] reliance" on the location of the ATA's corporate headquarters. ECF No. 72 at 10. Movant agrees. The ATA's membership encompasses manufacturers, distributors, and retailers located across the country, including in Colorado. Any meaningful discovery into this membership requires discovery in a number of jurisdictions, and the *Babst* and *Janochoski* plaintiffs provide no compelling argument that relevant discovery will be found in Minnesota. Similarly, internal entities with particular relevance to this litigation, including the ATA's Board and Retail Council, have communicated with members, held meetings, and generated discoverable material in venues throughout the country.

Similarly, though plaintiff Dunkin argues that defendants Bass Pro Shops and Cabela's, both of which are headquartered in the Western District of Missouri, will have a "significant

---

[16] *See Hunting*, VISIT MOFFAT COUNTY, https://www.visitmoffatcounty.com/activities/hunting/ (last accessed August 14, 2025).
[17] *State-by-State Hunting Data,* ARCHERY TRADE ASS'N, https://archerytrade.org/state-by-state-hunting-data/ (last accessed August 17, 2025).
[18] *Find Events in Your Area*, COLORADO BOWHUNTERS ASS'N, https://coloradobowhunting.org/Find-Events-In-Your-Area (last accessed August 17, 2025).

7

portion of documents and depositions[,]" ECF No. 22 at 9, these are national retailers which will generate relevant discovery from across the country. And, in any event, notwithstanding Bass Pro Shops' and Cabela's national presence, their joint corporate headquarters is located in Springfield, Missouri, some three hours away from the federal courthouse in Kansas City.[19]

      iii. *The majority of plaintiffs prefer centralization in the District of Colorado.*

Centralization in the District of Colorado also reflects the preferences of the greatest number of plaintiffs, as detailed above. Given Movant's position, plaintiffs in six Related Actions now support transfer to the District of Colorado, including the plaintiff in the first action to be filed. ECF Nos. 66, 67. One additional plaintiff supports transfer to the District of Colorado in the alternative. ECF No. 65. This is more than any other District. Plaintiffs in four Related Actions support transfer to the District of Minnesota (and another two support transfer to that District in the alternative), while another four support transfer to the District of Utah in the alternative. Support for the other two Districts is even smaller, with three plaintiffs supporting transfer to the Western District of Missouri, and just one to the Middle District of Tennessee. Transfer is most appropriate to the District of Colorado given the plurality of plaintiffs which fully support centralization there. *See e.g.*, *In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014) (centralizing in the District of Connecticut where "several plaintiffs" supported centralization in that district); *In re: Enfamil Lipil Mktg. and Sales Pracs. Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) (centralizing in the Southern District of Florida where this venue was supported "by several responding plaintiffs").

      iv. *Centralization in Colorado will be far more efficient due to superior judicial capacity.*

---

[19] GOOGLE MAPS, https://maps.app.goo.gl/5LihY5dNsnXULeS89 (last accessed August 17, 2025).

The District of Colorado possesses the most favorable docket conditions which will allow it to efficiently manage this multidistrict litigation. The District of Colorado does not currently oversee any MDLs.[20] This will allow the District to efficiently manage this complex action. *See In re: Erie COVID-19 Bus. Interruption Protection Ins. Litig.*, 509 F. Supp. 3d 1370, 1374 (J.P.M.L. 2020) (transferring to "an accessible forum with the capacity to efficiently manage these cases"); *see also*, *In re Am. Fam. Mut. Ins. Co.*, 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006) (transferring to the District of Colorado which "is not currently assigned to other multidistrict litigation dockets"). In addition, the Honorable Regina M. Rodriguez, to whom at least one of the Related Actions has been assigned, is an experienced jurist capable of leading this MDL. *See In re: GoodRx and Pharm. Benefit Manager Antitrust Litig. (No. II)*, 776 F. Supp. 3d 1346, 1348 (J.P.M.L. 2025) (transferring actions to a "relatively underutilized transferee district that presently has no pending MDLs" and a judge who "has not yet had the opportunity to preside over an MDL"). And the District of Colorado contains other experienced jurists who can manage this litigation if Judge Rodriguez does not wish to do so.

No proposed transferee District has more favorable docket conditions than the District of Colorado. In particular, the District of Minnesota would not be an appropriate transferee district because dockets in that District are burdened with *eight* pending MDLs.[21] Six are coordinating more than 30 individual actions, and one is coordinating over 8,000 cases. As of March 2025, the

---

[20] *See*, *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, JUD. PANEL ON MULTIDISTRICT LITIG. (Aug. 1, 2025) (last accessed August 15, 2025) ("*MDL Statistics Report*"); These favorable docket conditions extend to the appellate level. The Tenth Circuit currently only has four MDLs. *Id.*

[21] *See MDL Statistics Report*, *supra* at page 9. Additionally, the Panel recently transferred yet another MDL to the District of Minnesota. *See In re: Air Crash at Toronto Pearson Int'l Airport on Feb. 17, 2025*, --- F. Supp. 3d ---, MDL No. 3155, 2025 WL 2326833, at *1 (J.P.M.L. Aug. 8, 2025).

District of Minnesota had almost *three times* as many pending cases per judgeship as the District of Colorado.²²

Plaintiffs Babst and Janochoski argue that case numbers in the District of Minnesota are "skewed" by one particularly large MDL. *See* ECF No. 40 at 9; ECF No. 65 at 9. These plaintiffs offer no support for their assertion that thousands of claims can be ignored to create a more favorable portrayal of docket conditions in their preferred venue. They cite no basis for such an adjustment of judicial statistics. Even if there were, the District of Minnesota would still have seven *additional* MDLs, including three centering on antitrust claims.

The docket conditions in the Western District of Missouri and the Middle District of Tennessee are not more favorable than those in the District of Colorado, as these districts are managing two and one pending MDLs, respectively.²³ The District of Colorado has none.

## CONCLUSION

In light of the foregoing, Movant respectfully requests the Panel transfer and centralize the Related Actions before the Honorable Judge Regina M. Rodriguez of the District of Colorado.

---

²² *See United States District Courts – National Judicial Caseload Profile*, UNITED STATES COURTS, https://www.uscourts.gov/data-news/reports/statistical-reports/federal-court-management-statistics/federal-court-management-statistics-march-2025 (last accessed August 15, 2025).

²³ *See MDL Statistics Report*, *supra* at page 9.

Dated: August 20, 2025								Respectfully submitted,

  s/ *Gregory S. Asciolla*
Gregory S. Asciolla
Alexander E. Barnett
Theodore J. Salem-Mackall
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
gasciolla@dicellolevitt.com
abarnett@dicellolevitt.com
tsalemmackall@dicellolevitt.com

Kelly K. Iverson
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
(412) 322-9243
kelly@lcllp.com

Robert N. Peirce, III
D. Aaron Rihn
**ROBERT PEIRCE & ASSOCIATES P.C.**
437 Grant Street, Suite 1100
Pittsburgh, Pennsylvania 15219
(844) 383-0565
robpeirce@peircelaw.com
arihn@peircelaw.com

*Counsel for Shawn Butter and the Proposed Class*