BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ARCHERY PRODUCTS ANTITRUST LITIGATION | MDL NO. 3160 |

**PLAINTIFFS DON EICHMAN AND JOE KRAMER'S RESPONSE
TO THE MOTION TO TRANSFER ACTIONS FOR COORDINATED OR
CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs Don Eichman and Joe Kramer[1] agree that these proceedings should be consolidated and transferred under Section 1407 but that the District of Colorado (or, in the alternative, the District of Minnesota) is the most appropriate forum for the Related Actions[2] and any future tag-along actions to proceed.

Plaintiffs do not duplicate the arguments made by the several plaintiffs seeking transfer to the District of Colorado—Movant Butter in his reply (Dkt. No. 86), Santarlas and Goodall in their

---

[1] *Eichman et al. v. Archery Trade Ass'n, Inc., et al.*, No. 25-cv-2644 (D. Colo).

[2] The current related actions are:

1. *Babst v. Archery Trade Ass'n, Inc., et al.*, No. 0:25-cv-02721 (D. Minn.)
2. *Butter v. Archery Trade Ass'n, Inc. et al.*, No. 2:25-cv-01004-MJH (W.D. Pa.)
3. *Carollo v. Bowtech, LLC et al.*, No. 25-cv-631 (W.D. Mo.)
4. *Close v. Hoyt Archery, Inc. et al.*, No. 25-cv-617 (D. Utah)
5. *Dunkin v. Bowtech, LLC, et al.*, Case No. 4:25-cv-00546 (W.D. Mo.)
6. *Eichman et al. v. Archery Trade Ass'n, Inc., et al.*, No. 25-cv-2644 (D. Colo)
7. *Goodall v. Hamskea Archery Sols. LLC et al.*, No. 25-cv-2506 (D. Colo.)
8. *Hansen v. Archery Trade Ass'n, Inc. et al.*, No. 25-cv-779 (M. D. Tenn.)
9. *Hernandez Diaz v. Bowtech, Inc., et al.*, No. 2:25-cv-04277 (E.D. Pa.)
10. *Janochoski v. Hoyt Archery, Inc. et al.*, No. 0:25-cv-02788-LMP-ECW (D. Minn.)
11. *Langley v. Bowtech Inc. et al.*, No. 25-cv-3190 (D. Minn.)
12. *Milby v. Hamskea Archery Sols. LLC et al.*, No. 25-cv-2507 (D. Colo.)
13. *Montpetit v. Hoyt Archery, Inc., et al.*, No. 3:25-cv-00653 (W.D. Wisc.)
14. *Sabatini v. Hoyt Archery, Inc. et al.*, No. 25-cv-2355 (D. Colo.)
15. *Santarlas v. Hoyt Archery, Inc. et al.*, No. 25-cv-436 (D. Utah)
16. *Simcik v. Archery Trade Ass'n., Inc. et al.*, No. 0:25-cv-02875-LMP-JFD (D. Minn.)
17. *Swails v. Archery Trade Ass'n et al.*, No. 25-cv-3146 (D. Minn.)
18. *Vale v. Hoyt Archery, Inc. et al.*, No. 25-cv-3110 (D. Minn.)

response (Dkt. No. 66), or Close and Milby in their response (Dkt. No. 89). Instead, represented by the only Colorado counsel involved in any of the cases, Plaintiffs offer their perspective on why the District of Colorado is the most appropriate choice for centralization.

I.  **Factual and Procedural Background**

All filers agree that transfer and consolidation of these cases would meet the purposes of Section 1407. As of the date of this filing, 23 plaintiffs in 18 cases have filed similar suits. Three plaintiffs are from Colorado (Joe Kramer in this case and Justen and Tanya Goodall, also pending in the District of Colorado).

The first filed suit in Utah was initiated by a Pennsylvania plaintiff and voluntarily stayed. Dkt No. 44 in *Santarlas v. Hoyt Archery, Inc. et al.,* No. 25-cv-436 (D. Utah 2025). No plaintiff in any action is from Utah. No other suit has meaningfully advanced.

As of the date of filing, plaintiffs in six suits (representing eight plaintiffs) seek transfer to the District of Colorado as their first choice.[3] No other forum has that level of support—plaintiffs in four suits (representing five plaintiffs) seek transfer to the District of Minnesota;[4] plaintiffs in three suits seek transfer to the Western District of Missouri;[5] and a plaintiff in one suit seeks transfer to the Middle District of Tennessee.[6] Defendants, and Defendants alone, seek transfer to the District of Utah.[7]

---

[3] Butter, Dkt. No. 86; Close, Dkt No. 89; Goodall, Dkt. No. 66; Milby, Dkt. No. 89; Santarlas, Dkt. No. 66; Eichman (these filers).

[4] Babst, Dkt. No. 40; Janochoski, Dkt. No. 65; Simcik, Dkt. No. 64; Hernandez Diaz, Dkt. No. 59.

[5] Carollo, Dkt. No. 85, Dunkin, Dkt. No. 22; Montpetit, Dkt. No. 61.

[6] Hanseon, Dkt. No. 70.

[7] Dkt. No. 72.

## II. Argument

### A. The Panel Should Transfer the Related Actions to the District of Colorado

The District of Colorado is the best location for this case. Defendants' business decisions show the convenience of Colorado. The last MDL transferred to Colorado was in 2009, and since then the District has filled all active judgeships and has the capacity and capability to handle an MDL like this one. And the judge overseeing the first related case in the District of Colorado, Judge Regina Rodriguez, had extensive MDL experience before joining the bench and has handled similar cases since her appointment.

#### 1. The District of Colorado is the best location for this case

Many of the Defendants' business decisions show how convenient Colorado is to them. One defendant—Dick's Sporting Goods—chose to buy the naming rights to the stadium used by the Colorado Rapids, the professional men's soccer team.[8]



Dick's Sporting Goods invested in the naming rights because it operates at least thirteen stores in Colorado.[9] And Dick's Sporting Goods purchased the assets of long-time Colorado sporting-goods company Sports Authority, which was not only headquartered in Colorado but owned the naming rights for Mile High stadium during the Peyton Manning era.

---

[8] https://www.dickssportinggoodspark.com
[9] https://stores.dickssportinggoods.com/co/

3

Other Defendants have also focused on Colorado. Cabela's has chosen to place 3 of its 57 stores in Colorado, second only to Texas with 4 stores. And Bass Pro also has 3 of its 106 stores in Colorado. The bow makers are equally enthusiastic about Colorado—BowTech has 21 authorized dealers in Colorado,[10] Hoyt Archery has 16 authorized dealers,[11] Mathews Archery has 18 authorized dealers,[12] and Precision Shooting Equipment has 31 authorized dealers.[13]

Defendants' business decisions emphasize the importance and convenience of Colorado. They can also litigate there.

The District of Colorado makes sense for this case based on other, less party-specific factors. Colorado is centrally located with the nation's third-busiest airport,[14] with the fourth-most nonstop flight routes (231 daily),[15] providing convenient service to nearly every party or counsel. Denver has nearly 13,000 hotel rooms convenient to the federal courthouse and can easily accommodate those from out of town.[16]

Colorado has a recently built, highly functional courthouse with capacity to handle large and complex cases in its special proceedings courtroom.[17] For example, Chief Judge Brimmer recently tried three complex criminal antitrust jury trials with up to ten defendants in each trail using the larger courtroom. *United States v. Penn*, D. Colo. Case No. 1:20-cr-00152. The District of Colorado has the capacity—in judges, courtrooms, and travel convenience—to handle MDLs but has not been selected

---

[10] https://bowtecharchery.com/dealer-locator/

[11] https://hoyt.com/archery-dealers

[12] https://mathewsinc.com/pages/find-retailer

[13] https://psearchery.com/pages/pse-store-locator

[14] https://www.faa.gov/airports/planning_capacity/passenger_allcargo_stats/passenger/arp-cy2024-commercial-service-enplanements-prelim.pdf

[15] https://www.directflights.com/direct-flight-routes-us-airports

[16] https://www.denver.org/meetings/hotels-venues/find-a-hotel-block/hotel-updates/

[17] https://www.cod.uscourts.gov/AbouttheDistrict/AlfredAArrajCourthouse.aspx

to do so for some time. *See In re: Groupon, Inc., Mktg. & Sales Pracs. Litig.*, 787 F. Supp. 2d 1362, 1364 (J.P.M.L. 2011) (transferring to "relatively underutilized transferee district").

While the District of Colorado has been an historically busy district it nonetheless has a very low median time to disposition in civil cases (7.4 months) and time to trial in civil cases (40 Months) reflecting efficient work by its judges.[18]

And by nearly every metric, Colorado is a better venue for this MDL than Utah, where the Defendants suggest it go. Utah has only the twenty-third busiest airport[19] with less than half the nonstop flight routes (111) of Denver.[20] It has one-third fewer hotel rooms than Denver with a courthouse that is slightly older.[21] And even though the District of Utah has a lower per-judge caseload, it has a longer median time to disposition (9.1 months) and much longer time to trial in civil cases (53.3 months).[22]

So too with the Western District of Missouri—it has a much less accessible airport and older courthouse with similar case metrics to the District of Colorado. And the District of Minnesota is slightly behind the District of Colorado in every such metric.

### 2. The District of Colorado is underutilized and ready for its first MDL in sixteen years

The District of Colorado last received an MDL in 2009. *See* MDL No. 2063, *In re Oppenheimer Rochester Funds Group Securities Litigation*, transferred to Senior Judge John L. Kane, Jr.

---

[18] National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2025.pdf

[19] https://www.faa.gov/airports/planning_capacity/passenger_allcargo_stats/passenger/arp-cy2024-commercial-service-enplanements-prelim.pdf

[20] https://www.directflights.com/direct-flight-routes-us-airports

[21] https://www.visitsaltlake.com/press-research/facts-info/

[22] National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2025.pdf

Starting shortly after that MDL, in April 2010, the Administrative Office of the Courts designated the District of Colorado as having a judicial emergency due to a high caseload and a two-year-old vacant judgeship.[23] Since then through January 2024, when the final vacant judgeship was filled, the District of Colorado has operated with a judicial emergency or open judgeships for most of the time. But now, for the first time since 2010, the District of Colorado has had an extended period with no open judgeships and a full complement of magistrate judges. And the Administrative Office has not designated a judicial emergency in the District of Colorado since June 2021. Having been at full capacity for over 18 months and under the leadership of Chief Judge Philip Brimmer since 2019, the past concerns about sending MDLs to Colorado have substantially abated.

This case is an ideal one for the District of Colorado's return to hosting MDLs. It is a consumer antitrust class action—not a sprawling mass tort or products liability case with thousands individual suits brought under a variety of state laws. This case has a manageable number of parties: currently 18 plaintiffs asserting primarily federal antitrust claims[24] against around 14 defendants. Following transfer, if the transferee court follows the typical procedures, once leadership is established, they will file a consolidated complaint, and the case will proceed similarly to a single-filed action. The case will not place extensive, MDL-specific demands on the transferee court.

And this is a case where both sides are represented by able, experienced counsel with substantial MDL experience. Counsel for plaintiffs in the *Eichman* case have played significant roles in major MDLs on both sides of cases, other plaintiffs' counsel have MDL experience as well, and defense counsel similarly has experience in many MDLs.

---

[23] https://www.uscourts.gov/judges-judgeships/judicial-vacancies/archive-judicial-vacancies/2010/04/emergencies. (Judge Figa's judgeship had not been filled for 817 days).

[24] Only one of the 18 current complaints—*Montpetit v. Hoyt Archery, Inc., et al.*, No. 3:25-cv-00653 (W.D. Wisc.)—alleges state law antitrust claims.

### 3.     Judge Rodriguez would be an exceptional judge to oversee an MDL

Judge Rodriguez is exceptionally qualified and one of the few judges that comes to the bench with substantial MDL and MDL-adjacent experience.

Judge Rodriguez's senate questionnaire identified her extensive involvement in two MDLs before joining the bench, including MDL No. 2158, *In re Zimmer Durom Hip Cup Products Liability Litigation* assigned to Judge Susan Wigenton in the District of New Jersey, and MDL No. 1760, *In re Aredia and Zometa Product Liability Litigation* assigned to Judge Todd Campbell in the Middle District of Tennessee.[25] And the JPML ECF system reflects her participation in cases in several other MDLs, including MDL No. 2845, *In re Realtime Adaptive Streaming LLC Patent Litigation*, where the Panel denied consolidation, along with MDL No. 2734, *In re Abilify (Aripiprazole) Products Liability Litigation*, consolidated before Judge M. Casey Rogers in the Northern District of Florida and MDL No. 2151, *In re Toyota Motor Corp. Unintended Acceleration, Marketing, Sales Practices, and Products Liability Litigation*, consolidated before Judge James Selna in the Central District of California. Judge Rodriguez spent much of her time in private practice working on cases in MDLs, providing real-world experience on how MDLs work (and how they can be improved).

Judge Rodriguez's other experience shows she would be an excellent MDL judge. As Chief of the Civil Division at the United States Attorney's Office for the District of Colorado, she managed the federal government's docket of complex civil litigation. On the bench, Judge Rodriguez has managed 59 civil class actions as well as cases involving unfair competition.[26]

---

[25] https://www.judiciary.senate.gov/imo/media/doc/Rodriguez%20Senate%20Judiciary%20Questionnaire.pdf

[26] Westlaw Precision, Docket Analytics, "Hon. Regina M. Rodriguez" (class actions); *Otter Products, LLC et al. v. Triplenet Pricing Inc. et al.*, Case No. 19-cv-510 (unfair competition); *Bar Method Franchisor LLC v. Henerhiser LLC*, Case No. 21-cv-3357 (same).

The District of Colorado also has judges other than Judge Rodriguez who would make excellent MDL judges. For example, Judge Charlotte Sweeney focused on complex employment matters in private practice before joining the bench and has handled over 43 class actions.[27] She also has experience in managing antitrust cases, *see OreControl Blasting Cons., LLC v. Hexagon Mining Inc.*, No. 22-cv-01853-CNS (D. Col.); *Fontenot, et al. v. NCAA, et al.*, No. 1:23-cv-03076-CNS-STV. And Judge Nina Wang spent many years as a federal court practitioner focusing on intellectual property before becoming a magistrate judge in 2015 and district judge in 2022. Since 2015, she has overseen 67 class actions and 2 antitrust cases.[28]

All three of these judges have the "civil litigation and judicial experience to organize this litigation for a prudent course." *In re: Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011). And despite these impressive backgrounds, none of these judges have yet to preside over an MDL. *See In re TransUnion Rental Screening Sols., Inc., Fair Credit Reporting Act Litig.*, 437 F. Supp. 3d 1377, 1378 (J.P.M.L. 2020) (assigning "th[e] litigation to an able jurist who ha[d] not yet had the opportunity to preside over an MDL.").

### B.     In the Alternative, the Panel Should Transfer the Related Actions to the District of Minnesota

The District of Minnesota is second best to Colorado on the metrics discussed above, and in the number of plaintiffs seeking transfer there. If, for whatever reason, the District of Colorado is not an appropriate transferee court, the District of Minnesota provides the next best alternative: It has a slightly older courthouse, somewhat less convenient airport (17th busiest with only 169 nonstop flight routes), and case statistics slightly worse than the District of Colorado (median time to disposition in

---

[27] Westlaw Precision, Docket Analytics, "Hon. Charlotte N. Sweeney" (class actions).

[28] Westlaw Precision, Docket Analytics, "Hon. Nina Y. Wang" (class actions and antitrust).

8

civil cases of 8.7 months and time to trial in civil cases of 42.6 months). Yet these metrics compare favorably to the other possible transferee courts.

### III. Conclusion

Plaintiffs respectfully request that the Panel transfer and centralize the Related Actions and any future tag-along actions in the District of Colorado.

Dated: August 28, 2025

Respectfully submitted,

*/s/Eric Olson*
Eric Olson
Sean Grimsley
Kenzo Kawanabe
OLSON GRIMSLEY KAWANABE
HINCHCLIFF & MURRAY LLC
700 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 535-9151
eolson@olsongrimsley.com
sgrimsley@olsongrimsley.com
kkawanabe@olsongrimsley.com

Kimberly A. Justice
FREED KANNER LONDON
& MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6486
kjustice@fklmlaw.com

Matthew W. Ruan
Douglas A. Millen
Samantha M. Gupta
FREED KANNER LONDON
& MILLEN LLC
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
sgupta@fklmlaw.com

Counsel for Plaintiffs Don Eichman and Joe Kramer and the Proposed Class