**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: ARCHERY PRODUCTS ANTITRUST LITIGATION** | **MDL NO. 3160** |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS  JONATHAN
LANGLEY AND MOHAMMED HUSSAIN IN SUPPORT OF TRANSFER OF
RELATED ACTIONS TO THE DISTRICT OF MINNESOTA**

Plaintiffs Jonathan Langley and Mohammed Hussain[1] respectfully submit this response to Plaintiff Shawn Butter's Motion to Transfer Related Actions for Consolidated or Coordinated Pretrial Proceedings, ECF No. 1. Plaintiffs Langley and Hussain filed their case in the District of Minnesota on August 8, 2025. Plaintiffs Langley and Hussain are in accord with Plaintiff Erick Babst's Response to Motion to Transfer of Related Actions for Consolidated or Coordinated Pretrial Proceeds (ECF No. 40).

Like Babst, Plaintiffs Langley and Hussain support centralization under 28 U.S.C. 1407 but propose transfer instead to the District of Minnesota. Plaintiffs Langley and Hussain agree with Plaintiff Babst that Judge Laura M. Provinzino, who already presides over all of the Related Actions filed in the District of Minnesota,[2]

---

[1] *Langley, et al. v. BowTech Inc., et al.,* 25-cv-03190-PJS-DJF (D. Minn.).

[2] *See Babst v. Archery Trade Assoc.*, Inc., et al., Civil No 0:25-cv-02721 (D. Minn.); *Janochoski v. Hoyt Archery, Inc., et al.*, Civil No. 0:25-cv-02788-LMPECW (D. Minn.); *Langley, et al. v. Bowtech, Inc., et al.*, Civil No. 0:25-cv-03190 (D. Minn); *Simcik v. Archery Trade Assoc., Inc., et al.*, Civil No. 0:25-cv-02875 (D. Minn); *Swails v. Archery Trade Assoc., Inc., et al.*, Civil No. 0:25-cv-03146 (D. Minn); *Vale v. Hoyt Archery, Inc., et al.*, Civil No. 0:25-cv-03110 (D. Minn.).

would be an ideal transferee judge. In the alternative, Plaintiffs Langley and Hussain respectfully submit that the District of Colorado would also be an appropriate transferee venue.

## I.    Argument

### A.    The District of Minnesota Is the Most Appropriate Forum for Centralization.

As set forth in detail by Babst, the District of Minnesota is the most appropriate forum for centralization. Most importantly, the Archery Trade Association—the hub and organizing entity of Defendants' conspiracy—is headquartered in the District of Minnesota.[3] While various responding parties attempt to cast the ATA as nothing more than the sum of its constituent members,[4] that argument is belied by the allegations in the complaints. The ATA directed much of the intra-Defendant communication through which the conspiracy was effectuated, including issuing communications through its own official channels, and the ATA played a central role in creating and monitoring the industry-wide MAP policies that artificially inflated the price of Archery Products.[5] In determining the appropriate

---

[3] Compl., ¶ 17, *Langley, et al. v. BowTech Inc., et al.*, 25-cv-03190-PJS-DJF (D. Minn.) (ECF No. 1).

[4] *See, e.g.*, Pl. Santarlas Resp. at 13 (ECF No. 66); Joint Def. Resp. at 10 (EFC No. 72).

[5] *See, e.g.*, Compl., ¶ 65, *Langley, et al. v. BowTech Inc., et al.*, 25-cv-03190-PJS-DJF (D. Minn.) (ECF No. 1) (ATA CEO publishes article advocating for industry-wide adoption of MAP policies); ¶ 66 (ATA creates draft MAP policy for its members); ¶¶ 67-70 (ATA publishes newsletter detailing the assistance the ATA provided to members for the adoption of MAP policies); ¶ 75 (ATA publishes article on the industry-wide state of MAP policies); ¶ 83 (industry participant explains that "ATA has done an excellent job getting all the main players from retailers to manufacturers to sales reps in the same room and presenting the facts and sample policies"); ¶ 86 (ATA rolls out a compendium of resources for "Members Interested in MAP Policies,"

transferee venue, the JPML routinely centralizes related actions in a district where a principal defendant conducts its operations. *See, e.g.*, *In re "Factor VIII or IX Concentrate Blood Products" Prod. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) ("In selecting the Northern District of Illinois as the transferee forum, we note that… one principal defendant is headquartered in Illinois"); *In re Nissan N. Am., Inc., Odometer Litig. (NO. II)*, 542 F. Supp. 2d 1367, 1369 (J.P.M.L. 2008) (ordering transfer to a District where Defendant's headquarters was located and where relevant discovery would likely be found). Accordingly, the ATA's presence in the District of Minnesota strongly supports centralization there.

In addition, practical considerations support transfer to the District of Minnesota. More Related Actions have been filed in the District of Minnesota than in any other District. To date, eighteen Related Actions have been filed, of which six have been filed in the District of Minnesota.[6] The JPML recognizes that

---

which included "ATA [] resources about creating a MAP policy for your company"); ¶ 87 (ATA Retail Council meets in Minneapolis); ¶ 88 (ATA publishes article titled, "ATA Members Speak: Marketing, MAP, and What's Next.") ¶ 92 (ATA publishes article titled, "MAP: What is it? Why Does it Exist?" which explained that "the ATA works with manufacturers to establish and enforce good MAP policies" and provided a list of action items for its members); ¶¶ 97-98 (ATA launches its MAP Resource Library, a centralized repository of MAP policies); ¶ 104 (ATA creates a new page on its website specifically for Minimum Advertised Pricing); ¶ 105 (ATA releases ATA Connect, an online discussion community for discussion of MAP policies); ¶¶ 108-110 (ATA creates additional channels for the exchange of competitively sensitive information, including Retail Growth Interact and My ATA Network).

[6] *See Babst v. Archery Trade Assoc.*, Inc., et al., Civil No 0:25-cv-02721 (D. Minn.); *Janochoski v. Hoyt Archery, Inc., et al.*, Civil No. 0:25-cv-02788-LMPECW (D. Minn.); *Langley, et al. v. Bowtech, Inc., et al.*, Civil No. 0:25-cv-03190 (D. Minn); *Simcik v. Archery Trade Assoc., Inc., et al.*, Civil No. 0:25-cv-02875 (D. Minn); *Swails v. Archery Trade Assoc., Inc., et al.*, Civil No. 0:25-cv-03146 (D. Minn); *Vale v. Hoyt Archery, Inc., et al.*, Civil No. 0:25-cv-03110 (D. Minn.).

3

centralization is appropriate in a district where "[m]ore actions are pending in that district than in any other federal district." *In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 543 (J.P.M.L. 1975). Accordingly, this consideration also supports centralization in the District of Minnesota.

Because the Defendants are spread across the United States, Minnesota would also serve as a convenient, geographically central location. The following map depicts the locations of the headquarters for each of the eleven Defendants named in the *Langley* action, as well as the headquarters of alleged co-conspirators Neuintel LLC, and TrackStreet, Inc.



Unsurprisingly, the JPML has previously found the District of Minnesota to be a geographically central district. *See In re Operation of Missouri River Sys. Litig.*, 277 F. Supp. 2d 1378, 1379 (J.P.M.L. 2003) ("We note that given the distribution of the parties and actions in this docket, the Minnesota forum is an accessible and

geographically convenient district"); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) (selecting Minnesota due to the "varied locations of parties and witnesses in this docket and the geographic dispersal of pending actions"); *see also In re Rhodia S.A., Sec. Litig.,* 398 F. Supp. 2d 1359, 1360 (J.P.M.L. 2005) (concluding that a transferee district is appropriate "where an action is already pending" and that district "provides an accessible, metropolitan location."). Accordingly, this factor also supports consolidation and transfer to the District of Minnesota.

Docket conditions are as, or more, favorable in the District of Minnesota as in the other proposed transferee districts. While Plaintiff Santarlas and the Joint Defendants have taken issue with the District of Minnesota's pending cases per judgeship statistic, as noted by Plaintiff Babst, that statistic is greatly skewed by *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, No. 0:15-md-02666-JNE-DTS, which consists of more than 8,700 individual pending cases, all of which are centralized in front of one judge in a single pretrial setting.[7] Those conclusions about those "statistics" are thus not reliable without this massive gloss. After accounting for this anomaly, the District of Minnesota has only approximately 350 pending cases per judgeship, which is the fewest of the proposed transferee districts.[8]

---

[7] Pl. Babst Resp. at 9 (citing MDL Statistics Report – Distribution of Pending MDL Dockets by District (July 1, 2025),
https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-1-2025_0.pdf (last visited August 28, 2025).)

[8] National Judicial Caseload Profile, U.S. Dist. Cts., at 58, *available at* https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2025. pdf. Including *Bair Hugger*, the District of Minnesota has 11,207 pending actions.

|  | **D. Minn.** | **W. D. Mo.** | **D. Colo.** | **M.D. Tenn.** | **D. Utah[9]** |
|---|---|---|---|---|---|
| **Pending Actions Per Judgeship** | ~350 | 414 | 573 | 590 | 494 |

And while various responding parties have criticized the District of Minnesota for having more MDLs than the other proposed transferee Districts,[10] Judge Provinzino does not have an MDL assigned to her. That Judge Provinzino's colleagues have experience handling nationwide antitrust class action MDLs,[11] such as this, can only benefit the present litigation by providing the District of Minnesota's bench a wealth of experience and procedural precedent from which Judge Provinzino can draw. Accordingly, the District of Minnesota has "the resources and the capacity to efficiently handle what could be a large litigation." *See In re Zantac (Ranitidine) Prods. Liab. Litig.,* 437 F. Supp. 3d 1368, 1370 (J.P.M.L. 2020); *see also In re DePuy Orthopedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.,* 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011) (transferring to the court with "favorable docket conditions").

---

Excluding the *Bair Hugger* individual actions leaves 2,444 cases, which is approximately 350 cases per judgeship.

[9] National Judicial Caseload Profile, U.S. Dist. Cts., at 45 (M.D. Tenn.), 60 (W.D. Mo.), 79 (D. Colo.), 85 (D. Utah), *available at* https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2025.pdf.

[10] *See e.g.*, Pl. Santarlas Resp. at 4, 10 (ECF No. 66); Joint Def. Resp. at 1 (ECF No. 72).

[11] *See In re Cattle & Beef Antitrust Litig.*, No. 0:22-md-03031-JRT-JFD (D. Minn.); *In re Pork Antitrust Litig.*, No. 0:18-cv-01776-JRT-JFD (D. Minn.); *In re Granulated Sugar Antitrust Litig.*, No. 0:24-md-03110-JWB-DTS (D. Minn.).

Finally, Judge Provinzino is a capable and accomplished jurist who has not yet had the opportunity to preside over an MDL. Prior to joining the bench, Judge Provinzino worked as an Assistant United States Attorney in the District of Minnesota for more than fourteen years, "skillfully handl[ing] some of the most difficult cases prosecuted in [the] District."[12] The JPML has favored assigning MDL matters to capable jurists who have not yet presided over one. *See In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) ("We assign these cases to Judge Mary S. Scriven …, an experienced jurist who has not yet had the opportunity to preside over an MDL"); *In re Atrium Med. Corp. C-Qur Mesh Prods. Liab. Litig.*, 223 F. Supp. 3d 1355, 1357 (J.P.M.L. 2016) ("By selecting the Honorable Landya B. McCafferty to preside over this litigation, we are selecting a jurist with the willingness and ability to handle this litigation, but who has not yet had the opportunity to preside over an MDL"); *In re Shale Oil Antitrust Litig.*, 743 F. Supp. 3d 1371, 1372 (U.S. Jud. Pan. Mult. Lit. 2024) (transferring MDL to Judge Matthew L. Garcia, who was appointed to the bench a year-and-a-half prior to the assignment). Accordingly, Judge Provinzino's ability and readiness to preside over this MDL supports transfer to the District of Minnesota.

---

[12] Stephen Montemayor, *Senate Confirms Assistant U.S. Attorney Laura Provinzino to be next Minnesota federal judge*, Star Tribune (Sep. 12, 2024) (quoting Schiltz, J.), *available at* https://www.klobuchar.senate.gov/public/index.cfm/2024/9/senate-confirms-assistant-u-s-attorney-laura-provinzino-to-be-next-minnesota-federal-judge.

**B.      The Western District of Missouri and the District of Utah Are Not as Appropriate as the District of Minnesota.**

Plaintiffs Langley and Hussain respectfully submit that the Western District of Missouri and the District of Utah suffer from defects that render them less appropriate for this MDL than the District of Minnesota.

In support of the Western District of Missouri, Plaintiff Dunkin points to the location of the Bass Pro Shops' and Cabela's headquarters within the District and the convenience of Kansas City's international airport.[13] That argument, however, loses its force under closer scrutiny. Bass Pro Shops and Cabela's are not located close to Kansas City. Rather, they are headquartered in Springfield, Missouri,[14] which is a nearly three-hour drive from Kansas City[15] and is located in a different division of the Western District of Missouri.[16] While Plaintiff Dunkin also argues that Rogers Sporting Goods Holdings, Inc., is located about 15 miles from the Kansas City courthouse, no other plaintiff has named that entity as a defendant. Accordingly, depositions and document discovery will not center on Kansas City, and Plaintiff

---

[13] Pl. Dunkin Resp. at 9-11 (ECF No. 22).

[14] https://help.basspro.com/company-information-e8cd63ea/where-is-bass-pro-shops-corporate-headquarters-located-d15e9de5.

[15] https://www.google.com/maps/dir/Bass+Pro+Shops+Base+Camp,+2500+E+Kearney+St,+Springfield,+MO+65803/US+District+Court,+East+9th+Street,+Kansas+City,+MO.

[16] *Compare* https://www.mow.uscourts.gov/offices/kansas-city-western-division *with* https://www.mow.uscourts.gov/offices/springfield-southern-division.

Dunkin's proposed transferee venue—the Kansas City Division of the Western District of Missouri—has only a minimal connection to the litigation.

The District of Utah—the preferred destination of the Joint Defendants—is also an unsuitable transferee district for this case, which involves parties dispersed across the country, because it is not centrally located.[17] Joint Defendants chide Moving Plaintiff Butter for originally proposing a District "located near the East Coast and not convenient for several of the defendant parties,"[18] but the same can be said of their choice of a District in the Western United States. A centrally located forum, like the District of Minnesota, can avoid these inconveniences. *See, e.g.*, *Guidant Corp.*, 398 F. Supp. 2d at 1372 (selecting Minnesota due to the "varied locations of parties and witnesses in this docket and the geographic dispersal of pending actions"). And while the Joint Defendants make much of the fact that the District of Utah is the location of the *Santarlas* action,[19] Plaintiff Santarlas now supports centralization outside of the District of Utah.[20]

Accordingly, the Western District of Missouri and the District of Utah are less suitable transferee districts than the District of Minnesota.

---

[17] *See supra p.* 3.

[18] Joint Def. Resp. at 9-10 (ECF No. 72). Plaintiffs Santarlas and Goodall represent, however, that Moving Plaintiff Butter now supports centralization in the District of Colorado. Pl. Santarlas Resp. at 2, 14 (ECF No. 66).

[19] Joint Def. Resp. at 12-13 (ECF No. 72).

[20] Pl. Santarlas Resp. at 2 (ECF No. 66).

## II.    Conclusion

For the foregoing reasons, Plaintiffs Langley and Hussain respectfully request that Panel centralize the Related Actions in the District of Minnesota.

If the JPML does not select the District of Minnesota, Plaintiff requests that the Panel transfer the Related Actions to the District of Colorado. Four actions have been filed in the District of Colorado.[21] The District of Colorado is reasonably centrally located in relation to the alleged coast-to-coast conspiracy. And like Judge Provinzino, the Honorable Regina M. Rodriguez—the judge currently assigned to the Related Actions in the District of Colorado—is an accomplished and capable jurist who has no active MDL before her and appears to have yet to preside over one.[22] Consequently, the District of Colorado would be an appropriate alternative forum for this litigation.

Dated: August 29, 2025                    Respectfully submitted,

                                          /s/ David M. Cialkowski
                                          David M. Cialkowski
                                          Ian F. McFarland
                                          Zachary J. Freese
                                          Giselle M. Webber
                                          ZIMMERMAN REED
                                          1100 IDS Center 80 S. 8th St.
                                          Minneapolis, MN 55402
                                          david.cialkowski@zimmreed.com
                                          ian.mcfarland@zimmreed.com
                                          zachary.freese@zimmreed.com
                                          giselle.webbber@zimmreed.com

---

[21] *Sabatini, et al. v. Hoyt Archery, Inc., et al.*, No. 1:25-cv-02355-RMR (D. Colo.); *Goodall v. Hamskea Archery Solutions LLC, et al.*, No. 1:25-cv-02506 (D. Colo.); *Milby v. Hamskea Archery Solutions LLC, et al.*, No. 1:25-cv-02507 (D. Colo.); *Eichman v. Archery Trade Assoc., Inc.*, Civil No. 5-cv-02644-GPG (D. Colo.).

[22] *See* MDL Statistics Report *supra* note 7.

*Counsel for Plaintiffs Jonathan Langley and
Mohammed Hussain and the Proposed Class*